PRESQUE ISLE SASH & DOOR CO. *v.* REICHEL.

1. CHATTEL MORTGAGES—MECHANICS' LIENS—PRIORITY.

   A chattel mortgage lien existing before the right to a mechanic's lien comes into existence, having been perfected, as the law requires, takes precedence over the mechanic's lien; subsequent mortgages yield priority to the lien. 3 Comp. Laws, § 10718 (5 How. Stat. [2d Ed.] § 13774).

2. MECHANICS' LIENS—MORTGAGES—FORECLOSURE—EFFECT.

   Foreclosure of a prior mortgage taken in good faith to secure a valid indebtedness and recorded before the work for which these liens are asserted was begun, eliminated, and the purchasers' title took priority over, the lien of a mechanic.

3. SAME—SALES—LIEN OF VENDOR.

   A seller of certain band saw machinery installed in a sawmill under a contract reserving title in himself did not thereby lose his right to file a mechanic's lien: nor was he required to assert his title by retaking the machinery.

4. SAME—SALES.

   And the vendor's lien, so reserved, took priority over mechanics' liens subsequently filed.

5. SAME—CHATTEL MORTGAGES—CONDITIONAL SALES.

   After foreclosure of the mortgage, the rights of the buyer in the band saw machinery passed to the purchasers at foreclosure sale: but their rights did not take precedence over the seller's reserved title.

Appeal from Marquette; Flannigan, J. Submitted November 18, 1913. (Docket No. 145.) Decided March 27, 1914.

Bill by the Presque Isle Sash & Door Company against George Reichel and others for the enforcement of a mechanics' lien. From a decree for a lien

upon property claimed by intervening defendants, Theodore A. Schneider and Frank C. Brown, they appeal. Reversed.

A. E. Miller and W. S. Hill, for appellants.

Charles R. Brown and George P. Brown, for appellee.

STEERE, J. This suit, originating with its one complainant and many defendants, has resolved itself into a controversy between defendants Schneider & Brown, appellants here, and the originally named defendants Gustafson, Hanmer, Hakanson, Haslitt, and Carter, who filed bills of intervention and claim liens, amongst other things, on a band mill owned by Schneider & Brown; the said five interveners being on this issue complainants and appellees. The original bill of complaint was filed by the Presque Isle Sash & Door Company, on August 10, 1911, to enforce its lien for certain material which went into a sawmill in which said band mill was later installed, but its claim and the interests of all other parties to the suit, except as above stated, have either been satisfied or abandoned.

A sawmill, which was the source of these and allied issues, was built in 1910 by defendants Reichel, as copartners under the name of Reichel Bros., on a site in the city of Marquette leased for 10 years from the Duluth, South Shore & Atlantic Railway Company. As originally planned and built it was equipped with a circular saw, being completed in October of that year. In December of the same year they executed to one Bice, as trustee, a mortgage upon said mill, including the lease and machinery, giving a detailed list of said machinery and equipment then installed in the mill, to secure various parties who had become indorsers for them during the erection of the mill. The mortgage also covered "all machinery, tools and equip-

ment that shall hereafter, so long as the notes hereby secured remain unpaid, be added to or placed in said sawmill building for use in connection therewith." This mortgage was recorded in the office of the register of deeds for Marquette county and filed in the office of the recorder of the city of Marquette, in which the mill was located.

The following spring Reichel Bros. made a sawing contract with one Roland H. Jenney to saw a large quantity of logs which he owned and which he desired to be manufactured by a band saw, instead of the circular saw which they had installed in their mill. To that end, on May 12, 1911, a written contract was entered into between the parties, with various recitals of what each desired and proposed, stating that, the mill being equipped with a circular saw, it was intended to install a band saw equipment by which Jenney's logs would be sawed. The material provisions of this lengthy contract, briefly stated, are as follows: Jenney agreed to purchase for use in said mill "a band mill and equipment consisting of one Garland make 8-foot band mill with late type guides," describing its parts and appurtenances in detail and at length "for $1,500, as per certain proposals from Meister & Son," and Reichel Bros. agreed to pay the freight on the same from Bay City and at their own expense install it in running order in their mill, the ownership thereof, and title to the same, to remain Jenney's until it was fully paid for according to the terms of their agreement, they agreeing to purchase it of Jenney for $500 and the insurance which he had paid thereon, and pay the same during the first two months regardless of the condition of the mill. The contract further provided that "none of the machinery herein mentioned shall become a part of the real estate." Jenney was to deliver the logs at the mill, and Reichel Bros. were to saw them with the band

saw, piling the lumber as directed by Jenney. A scaler was to be mutually agreed upon, and payment was to be made at a stated price per thousand on lumber which had been piled 90 days. Accurate books were to be kept showing all men employed in and around the mill and expenses incurred in sawing said logs, with a statement of which Jenney was to be furnished weekly. He was to make advancements to pay wages of employees, and had authority, if he deemed it necessary to protect his property from labor liens, to pay the employees, the amount so paid to be charged to Reichel Bros. and treated as payments on their sawing contract. They were to install the band saw with its equipment and have it in running order on or before June 5, 1911, and thereafter run the same continuously until the logs were sawed. In case Jenney advanced any other sums to them under said contract he was to retain the same out of any sums coming due to them. They agreed to at all times keep the property which belonged to Jenney free of all liens and claims of liens of every kind, and in the event liens were placed upon the property of Jenney he was authorized to forthwith take possession of the mill and operate it till the completion of the contract.

The band mill was purchased by Jenney and installed by Reichel Bros. as agreed, and at the time of the trial of this suit in the court below it remained in the mill as a substitute for and in place of the original circular sawmill equipment installed in the year 1910.

Reichel Bros. sawed but a portion of the logs and made default in the contract, failing to pay any portion of the purchase price of the band mill, and various liens were filed, but Jenney did not take possession nor operate the mill as he was authorized to do. He is shown, however, to have been frequently at the mill while the changes were being made and the work

in relation to his contract going on, and to have had knowledge of what was being done in reference to it, urging from time to time that it be expedited.

The notes secured by the chattel mortgage given by Reichel Bros. having become due, said mortgage was regularly foreclosed, on October 12, 1911, and the property it covered bid in by Bice, trustee. At the time of the sale, public notice was given that statements of lien (including those of the intervening complainants here) were then on file in the office of the register of deeds of Marquette county against the property about to be sold, that the mortgagees had no personal knowledge of said claims beyond what was shown by the records, and sale of the property under the mortgage foreclosure would be made subject to all valid liens. The notice of sale stated also that the foreclosure was of all 'right, title, and interest of Reichel Bros. to the Garland band mill, describing it and its appurtenances, subject however, to the rights of Roland H. Jenney, according to said agreement of May 12, 1911, between said Jenney and Reichel Bros.

On October 23, 1911, Bice, trustee, sold to defendants Schneider & Brown the property which he had purchased at the foreclosure sale, describing the same, "subject, however, to all rights of Roland H. Jenney in and to a certain 8-foot band mill and its appurtenances," owned by him, but which had been placed in said sawmill after execution of the chattel mortgage under an agreement between him and Reichel Bros., and subject to all liens of every kind against said property or any part thereof. Thereby they became the owners of all the rights and equities of said Bice as acquired by his mortgage foreclosure from Reichel Bros.

Jenney did not repossess himself of the band mill nor take any steps to forfeit the contract for its sale to Reichel Bros. He was originally made a party to

this suit, but, after entering his appearance, was defaulted, and died during its pendency. The suit was thereafter dismissed by stipulation as to his estate, without prejudice to the rights of the remaining parties to the suit. After his death his estate was administered, his widow being appointed administratrix, and on June 22, 1913, Schneider & Brown, who had acquired all Reichel Bros.' former rights in the sawmill, obtained by bill of sale from Sarah Jenney, administratrix of the estate of Roland H. Jenney, for a stated consideration of $260.59, all interest of his estate in the band mill and its appurtenances. Said bill of sale contained an assignment of a $1,000 fire insurance policy on said property and a warranty of title. Of this transaction Brown testifies as follows:

"Q. Will you please state what the actual deal was?

"A. We had moneys due us from R. H. Jenney's estate which made up the balance of the purchase price as agreed upon in the contract.

"Q. Was that indebtedness under a contract which you had made with Mr. Jenney, or his estate?

"A. It was verbally agreed between ourselves and Mr. Jenney that he was to allow us credit for whatever moneys we left with him that would be due us. * * *

"Q. What was the total amount you agreed upon as the selling price of this band saw?

"A. The exact amount is stated in the contract. So far as the cash is concerned it was $260.59, and in addition $125, which Mr. Jenney claimed was due him for freight and which should have been paid by Reichel Bros.

"Q. You paid a total of $625?

"A. Yes, sir. * * *

"Q. Did you agree with Mrs. Jenney upon the price of the band mill?

"A. No, sir, we agreed with Mr. Jenney.

"Q. You agreed with Mr. Jenney?

"A. Yes, sir.

"Q. And what was that agreement?

"A. To accept the price he made with Reichels.

"*Q.* You were to pay the same price that Reichel Bros. was to have paid him?

"*A.* Yes, sir.

"*Q.* That was $500, was it not?

"*A.* Yes."

The liens of the five appellees sought to be enforced by bills of intervention are in statutory form. They describe the leased land on which the mill was located, and state they are for labor performed under contract with Reichel Bros. in "building, constructing, and erecting a certain building and structure known as a sawmill, with its appurtenances," etc. The band mill was not named, nor any distinct claim made as to any specially designated appurtenances. Said liens varied only as to time and amount. Hakenson's was for labor performed between the 18th of May and 31st of August, 1911, lien filed September 5, 1911; Haslitt's for labor performed between May 16 and August 26, 1911, lien filed September 5, 1911; Gustafson's for labor performed between May 22 and June 10, 1911, lien filed July 26, 1911; Carter's for labor performed between May 8 and August 22, 1911, lien filed September 5, 1911. In each case it is said, "for which amount your orators claim a lien on said structure, the machinery, and the appurtenances thereof," thus asserting their liens were upon property owned by Reichel Bros. and for labor performed under contracts with them, without reference to any other ownership, contract, or particular machinery, or to Jenney's connection with it.

The bills of intervention also describe the property in general terms, designating no particular piece of machinery or part of the mill, and prayed "that all and singular said premises with the appurtenances may be sold by the order and decree and under the direction of this court," etc. The trial court found that all liens, including those of appellees, based on the ownership and property rights of Reichel Bros.

were cut off and barred by foreclosure of the chattel mortgage, but held that appellees' liens had attached to and could be enforced against the interest or title which Jenney had reserved in the band mill by reason of their having helped to install the same, and so decreed.

It is appellants' chief contention that Jenney was not the owner, did not have or claim to have any interest in the land, by lease or otherwise, or in the improvements made; that no contractual relations, direct or indirect, existed between him and appellees; that they performed no labor of any kind for him or his property interest, and did no work upon the band mill to improve or increase its value to him by building, altering, improving, repairing, erecting, or ornamenting it, their only work being to connect and install it in Reichel Bros.' sawmill for Reichel Bros.' use and benefit, and therefore can claim no lien against Jenney or his property; and also that the decree has no support in the facts proven, nor foundation in any statements of lien or bills of intervention to foreclose a lien against Jenney's property. Appellants also claim that all work of installing the band mill was completed on July 6th, and the statements of lien, which also include other work of an entirely different character done before and after that time, were filed too late to maintain them against that particular property. This was a question of fact in the case which we do not deem it necessary to pass upon.

For appellees it is said their claim of lien is both upon the leasehold interest and the structure, with its appurtenances erected by the lienors; that Jenney was the moving party in procuring installation of the band mill and had "an immediate, beneficial interest in the improvement" into which his property was going, and consented to the same, rendering his title interest also liable, and therefore he and those claim-

ing under him are estopped from setting up his title to defeat a mechanic's lien for work upon his property; and that the foreclosure of Bice's mortgage did not operate to defeat the interveners' liens for labor performed prior to the mortgage foreclosure. It is to be observed the latter contention is not in harmony with the views of the trial court by which it was found that, so far as Reichel Bros.' interests were concerned, all liens for labor performed after recording said mortgage were barred by the foreclosure, thereby operating to defeat the claims of others who had filed liens and have not appealed, but sustaining appellees' liens on the theory that they were good as to Jenney's retained interest in the band mill, which was not covered by the mortgage and so not cut off by its foreclosure.

Upon the question of the effect of the mortgage foreclosure it is stated as a general rule that—

"All mortgage liens existing before the right to a mechanic's lien comes into existence—having been perfected as the law requires—are prior to the mechanic's lien and mortgages subsequent thereto yield priority to the lien of a mechanic. * * * The fact that the value of the mortgage security has been enhanced by the labor or material of a mechanic will not affect the priority of the mortgage." Rockel on Mechanics' Liens, § 155.

See, also, Phillips on Mechanics' Liens, §§ 232-237; Boisot on Mechanics' Liens, § 144.

In harmony with this general rule, section 9, subdivision 4, of our mechanics' lien law (3 Comp. Laws, § 10718), provides:

"The liens for such labor or materials furnished, including those for additions, repairs and betterments, shall attach to the buildings, machinery, erection, structure, or improvement for which they are furnished or done, subject to any prior recorded title, claim, lien, incumbrance, or mortgage to or upon the

land upon which such building or buildings, machinery, erection, structure or improvement belongs or is put.  Any person holding a lien for such labor or materials furnished upon any premises subject to any prior recorded lien, incumbrance or mortgage may pay off any such prior lien, incumbrance or mortgage, and shall thereupon be subrogated to all the rights of the prior holder of such lien, incumbrance or mortgage."

We think the trial court rightly held that the prior mortgage, given and taken in good faith to secure a valid indebtedness and recorded before the work for which these liens are asserted was begun, had priority over, and its foreclosure eliminated, said liens.  But we are unable to accept the conclusions of the court that appellees had a lien on the band mill because Jenney, not having received his pay, had retained title as security for his unpaid debt.

Jenney had no ownership or property interest in the sawmill upon which the liens were filed, beyond security for what was owing him by the owners to whom he had sold this piece of machinery to equip it.  The band mill was but one of the numerous pieces of machinery and parts of the sawmill in its entirety.  His only interest was to have his logs sawed, and by a band saw, to which end he sold the owners a band mill to put in the sawmill, "for use in connection therewith," at an advantageous price to them.  It was no less a contract of bargain and sale because he secured himself by reserving title and the right to retake possession.  They installed it in their mill with their own labor.  He, like appellees, was a creditor of the owners of the mill in having helped to erect and equip it.  He furnished material, they labor.  Their labor in no way changed or improved the band mill, as such; if anything they deteriorated its value, except for use in that particular sawmill, which he did not own.  He could have filed a claim of lien as well as they.

His retention of title did not change his status in that particular. *Peninsular General Electric Co.* v. *Norris*, 100 Mich. 496 (59 N. W. 151); *Hooven, Owens & Rentschler Co.* v. *Featherstone*, 111 Fed. 81, 49 C. C. A. 229; *Clark* v. *Moore*, 64 Ill. 279; *Case Manfg. Co.* v. *Smith* (C. C.), 40 Fed. 339. In the latter case it is said:

"Retaining title as a means of securing payment on the part of defendants did not impose upon complainant any duty or obligation to assert such title by resuming possession of the machinery. Complainant could still look to defendants personally for the payment of the purchase price of the machinery, and to any and all other remedies conferred by law to enforce its payment."

During all the various proceedings following Reichel Bros.' default in carrying out their contract with Jenney, and failure to pay their indebtedness secured by the chattel mortgage, and up to the time of hearing this suit, the band saw remained installed in the sawmill undisturbed, connected and ready for operation as an equipment and integral part of said sawmill, considered as an entirety for sawmill purposes, the title however remaining in Jenney, but subject to the rights of Reichel Bros. under their contract of purchase with him. While he might, by reason of their default in payment of the purchase price, have declared the contract forfeited, retaken the band mill and removed it as personal property and resold it, he could also allow it to remain, and bring an action against the vendees for the purchase price, and, as against them, assert a lien on the entire mill for what they were owing him. He did nothing in relation to it, so far as shown, until after Schneider & Brown bought the sawmill and all former rights of Reichel Bros. in that connection from Bice, who held title under the foreclosure, and then orally ratified the contract of sale of the band mill, which he had never

revoked, at the same price to Schneider & Brown, which was later, after Jenney's death, consummated by his executrix, Mrs. Jenney, they paying her therefor and receiving from her a bill of sale.

At the time appellees were performing the work of installing, or erecting, the band mill in the sawmill for Reichel Bros., the latter had possession of it, a contract for its purchase, and tentatively were its owners, subject only to those rights being defeated by Jenney declaring their contract forfeited for nonpayment, asserting his title, and taking possession of it. Whatever rights they had were subject to the mortgage and went to the purchaser on foreclosure.

So far as the record discloses, Jenney's only claim in relation to this band mill after he sold it to Reichel Bros. was for the purchase price which they owed him. Their right to consummate the purchase by payment passed, through the mortgage foreclosure, to Schneider & Brown. Both Jenney and appellees were creditors to Reichel Bros., he for machinery and they for labor—both of which went into the building in question. He had a prior lien by contract on what he furnished; they subsequently filed a statutory lien which they claim covered the property he had furnished and had not received his pay for. We are asked to hold, in effect, that their statutory liens for labor, later filed, take priority over his previous vendor's lien by contract, and, in result, operate as an assignment to them of his claim for the purchase price of an article sold to their common debtor, because they, while in the employment of said debtor, helped to install the article in the debtor's building with his knowledge. We cannot conclude that the statute goes to that extent.

If the doctrine of estoppel applies at all in these proceedings it could only estop Jenney from asserting his title to the property and repossessing himself of it in

denial of its having become a permanent appurtenance of the sawmill; in which event it would be covered by the mortgage to Bice and pass on foreclosure with other appurtenances of the structure.

For the foregoing reasons we are constrained to conclude that the decree declaring a lien on said band mill must be reversed with costs, and a decree entered in this court dismissing said bills of intervention as to appellants.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.