PERKINS *v.* THE GOLDEN GIRL.

1. LIENS—WATERCRAFT—BILL OF COMPLAINT—WAIVER OR LOSS OF LIEN—FAILURE TO STATE CORRECT AMOUNT.

Complainant's lien against a boat for an engine and materials supplied was not lost by reason of his failure to state the correct amount due, where it appeared that the error made in the bill of complaint was not intentional or was made in good faith and was not so excessive as to be misleading. 3 Comp. Laws, § 10790; (5 How. Stat. [2d Ed.] § 13626).

2. SAME—MARITIME LIENS—WAIVER—LIEN FOR PURCHASE PRICE—
CONDITIONAL SALES—RETENTION OF TITLE.

The fact that the complainant, in a suit to enforce a lien
against a water craft, retained title to the engine and
materials furnished for the boat was not in itself a
waiver of his right to the statutory lien in a case in
which no steps had been taken to enforce the contract
nor any action by complainant which would have a
tendency to indicate that he intended to relinquish the
statutory claim.

3. SAME—CREDIT—MATERIALMEN—WAIVER.

Complainants' contention that the materials for the boat
were furnished upon the credit of the owner of the vessel
was not conclusive where complainant provided an engine
for the boat and retained title to the engine by express
agreement; the lien, being a nonmaritime lien under this
statute, attached by operation of law, the materials fur-
nished being of the character included by the terms of the
statute.

4. SAME—PERSONAL PROPERTY—ATTACHMENT OF CRAFT—STATUTES.

Nor could it be said as a defense to complainant's proceed-
ing to enforce the statutory lien that the engine was not
part of the boat.

5. SAME—FEDERAL ACT—MARITIME LIEN—PROCEEDINGS IN REM.

The act of Congress of June 23, 1910, 36 U. S. Stat. 605
did not deprive the State court of jurisdiction to enforce
the contract or claim for work and materials furnished
in equipping and constructing a boat, before it was reg-
istered or put in commission.

6. SAME—RECOUPMENT—DAMAGES—EVIDENCE.

Where defendant set up a claim for defects in the engine
but failed to produce definite evidence of damages, and
where her testimony was open to doubt or criticism on
the ground that she had admitted in a letter that it
worked properly and made no formal complaint relative
to the working condition of the engine which she con-
tinued to use down to the date of the hearing and with-
out complying with the conditions of the warranty upon
which she relied, her claim of recoupment should be
denied.

7. SAME—DECREE—BOND—PRINCIPAL AND SURETY—APPEAL BOND.

Under 3 Comp. Laws, §§ 10805 and 10827 (5 How. Stat.
[2d Ed.] §§ 13651, 13663), a decree on appeal reversing

the action of the trial court which denied complainant the right to a lien on a watercraft may be entered in the Supreme Court against the principal and surety upon the appeal bond and the decree be reversed or modified in the appellate court by such order as the case might require.

Appeal from Kent; Barton, J., presiding. Submitted January 12, 1915. (Docket No. 74.) Decided March 18, 1915.

Bill by Willis J. Perkins against the boat Golden Girl and other defendants to enforce a statutory lien. From a decree for defendants, complainant appeals. Reversed.

*Martin H. Carmody,* for appellant.
*Charles E. Ward,* for appellees.

STONE, J. This proceeding was brought under chapter 298, 3 Comp. Laws, providing "for the collection of demands against water craft." The complainant was engaged, at the city of Grand Rapids, in the manufacture of marine engines, and other machinery, doing business as the Grand Rapids Gas Engine & Yacht Company. The action was begun to recover the balance claimed to be due complainant from defendant Elizabeth Eaglesfield, for a certain engine, material, accessories, and equipment furnished by complainant to defendant in and about the original building, fitting, furnishing, and equipping of the boat Golden Girl while in process of construction on the dry dock in the city of Grand Rapids, during the period from September, 1908, to July, 1909, and before said boat had been launched and put in commission, or had been used in or about the waters of the State of Michigan, or had been licensed or enrolled under the Federal statutes. Said boat was above five tons burthen, and was intended to be used in navigating the waters of the State of Michigan. The amount

sought to be recovered here is a balance due on said engine, represented by two past-due promissory notes of $878 and $500, respectively, with interest at 6 per cent. per annum from date of delivery of engine, to wit, June 12, 1909, and a balance on an open account for accessories, labor, etc., admitted by defendant Elizabeth Eaglesfield as $42.65, upon which latter sum interest at 5 per cent. per annum is claimed from February 14, 1910, when, it is claimed, it became an account stated. The engine in question, a four-cylinder marine engine, was purchased by said defendant from complainant on or about February 8, 1909, at the agreed price of $2,178, according to a written contract, to be paid as follows: $500 cash on February 16th, and $300 on date of shipment, and notes for balance. On this contract $500 were paid on February 20, 1909; $150 on June 10, 1909; and $150 on June 12, 1909. The two notes above referred to were given for the balance. Later on further materials, equipment, and labor were furnished to be used in the original construction of the boat. Concerning the amount due for these extras, there was some disagreement of the parties. The complaint in the case was sworn to January 26, 1910. It contained a schedule of extras amounting to $242.23, and claimed a balance due of $1,620.23. The bill was filed in the Muskegon circuit court, February 2, 1910. (The case was later transferred to the Kent circuit.) Between the date of swearing to the bill and filing the same, to wit, on January 28, 1910, the defendant Elizabeth Eaglesfield went to complainant's place of business, and paid complainant's clerk $100 in cash, and received credits amounting to $88.08 for goods returned on the open account. She then admitted there was still due and unpaid on the account for extras $42.65, leaving in dispute $11.50, which she claimed she did not owe.

The written contract signed by the said defendant Elizabeth Eaglesfield contained the following clauses:

"Title and ownership of all property herein ordered shall remain in the name of the vendor until the full purchase price is paid, and the property herein ordered shall not be removed from boat 'Eaglesfield' without the written consent of the vendor, until payment is made in full.

"All property that is hereby ordered, purchased and sold is subject to the following warranty and agreement: That any part shipped as herein ordered, showing defective material or improper workmanship within one year from shipment, will be replaced f. o. b. cars Grand Rapids, Mich., upon receipt by the manufacturers of the alleged defective part at their shop, charges prepaid, if on examination the fault is found inherent therein. That the engine herein sold if properly run and rightfully managed will develop the H. P. it is rated at. If upon trial said engine fails to operate as stated, the operator following intelligently the printed directions furnished, then written notice stating wherein it so fails is to be given immediately by the vendee to the vendor at their home office and time allowed them to receive the same and remedy the trouble. This may be done by giving further instructions by letter, or sending operator, the vendors to use their discretion in the matter. The failure to so notify the vendors in case of any trouble, shall be deemed a waiver of all rights of second party under the warranty.

"If expert is sent, and on examination finds the trouble, if any, is caused by improper installation or operation of the machinery, or neglect to properly follow the printed instructions furnished by the vendors, then the second party is to pay the first party all costs incurred by said expert and $4.00 per day wages while expert is absent from their factory.

"It is understood and agreed that the vendors shall not be held responsible for damages by reason of defects in goods herein ordered, except to the extent of supplying parts to remedy actual inherent faults, if any, therein.

"No understanding or agreement, whether verbal or otherwise, will be recognized or assumed by the

vendors unless specified in writing in this contract, and accepted by them."

Both of said promissory notes contained the following clause:

"It is expressly agreed that the title and ownership of the said property shall remain in the Grand Rapids Gas Engine & Yacht Company until said notes or their renewals, if any, are paid in full."

It is the claim of complainant that, at the time the complaint was sworn to, the schedule attached thereto stated correctly the amount of indebtedness due him, and that the payment made, and credits received by said defendant were not personally known to complainant or his attorney until after the complaint had been filed. The case was tried in the court below before a jury on June 23, 1914. The complainant called the defendant Elizabeth Eaglesfield as a witness, under the statute, and she was the only witness sworn upon the trial. The promissory notes above mentioned were offered, and received in evidence. Upon the trial some question arose whether the notes should be surrendered and canceled or not. The defendant Elizabeth Eaglesfield gave testimony tending to show that the engine had not worked properly, and that she had been obliged to change it from a kerosene to a gasoline engine, and that she had made complaints to the complainant of defects in the engine. After the boat had been seized under the process of the court, it had been bonded by said defendant under the statute, and she had used it during the seasons of 1910, 1911, 1912, and 1913. The $500 note became due November 1, 1909, and the $878 note became due December 1, 1909. Said defendant had been notified of her past-due indebtedness, and on December 4, 1909, she wrote complainant a letter as follows:

"*Dear Mr. Perkins:* While on the lake I never

saw your letters and never opened them until yesterday with Philip. I see you are very much displeased, but you are not more disappointed than I that it was impossible for me to meet my notes. We had much to contend with this summer—but laying all explanations and excuses aside, Mr. Perkins, I do not want you to feel anxious about what is due you. It will all be paid. Philip and I can and will pay all our obligations—and when we go out this spring all we make I will send you and will send to you right along as we make it. I am not behind on payment, but three and two months.

"You know business exigencies are such one cannot always help that. The engine is intact, the boat is fine, and we are well and I know we are honorable— I shall meet all my obligations and as I know you as all business men need money I want you to feel sure as we are sure you will get all your money and just as soon as we can possibly get it. I have looked over the accounts with Philip, but I cannot come over this morning. Philip will be back in a week or so, just as soon as he can safely leave the boat in the care of some one and then I will come over and look over the accounts—I was terribly imposed upon by the men who moved the boat to the water and also the man who made the tanks and that with the misfortune of the last trip is what rendered it impossible for me to hand you some money.

"I have had my due share of disappointments, and perplexities, many of them, and I am sorry to be the cause of any to you. Had I not felt so certain I could meet my obligations with you, I never should have bought the engine. I hoped much from it and was full of hope in every way.

"Much as I hate the water and hard as it will be for me, I shall go out with him on the boat this spring to make the money to pay for the engine—I can do no more than that, only again to assure you the engine will be entirely paid for just as soon as it is possible.

"Very truly,
"MRS. E. EAGLESFIELD."

She also wrote Mr. Honne, complainant's foreman, the following letter on February 14, 1910, viz.:

"La Rue Lumber Company, Incorporated.
          "INDIANAPOLIS, IND., February 14, 1910.
"Grand Rapids Gas Engine & Yacht Co.,
     "Grand Rapids, Mich.
          "Mr. Honne, Foreman.
"*Dear Sir:*
     "Reached Indianapolis Saturday night and can now pay my running account in full—$42.65, providing it will be accepted as payment in full of my account. I inclose you the list which you made at the time we looked over the accounts, January 28th, when I paid $100.00. The last $10.00 is for the lever on the engine. It seemed to me rather a good price for this extra lever, since I was entitled anyway to a lever. The settlement does not include the claim on repair of the governor, but I do not feel that the damage to the governor was at all my fault, and also since I was at the expense of taking it off, and taking it to you, and putting it on, I thought in consideration of my paying this now, Mr. Perkins would look upon the account as I do.

     "I address this to you because you settled up the account with me, and I inclose you the figures which you made, so as to verify my balance. I will then owe only what is due on the engine and as my notes bear interest from the time of delivery of the engine, will you please inquire and tell me at what date you claim that interest began to run?

     "Please give me as early an answer as possible.
                    "Very truly,
                         "MRS. E. EAGLESFIELD."

These letters are very significant when considered in connection with her claim that the engine did not come up to the warranty. She never made any complaint in writing.

After complainant rested, the said defendant also rested, without offering any evidence.

Said defendant then claimed that complainant was not entitled to the relief sought for the following reasons:

     (1) That complainant had lost his right of action,

because in his complaint he had claimed a greater amount than was actually due when the action was commenced and the boat attached.  (2) That complainant, both in his contract with defendant, and in the notes given by defendant, retained title to the engine and materials in question, and for that reason waived his right to the lien as provided by the statute in relation to water craft.  (3) That in this case the credit had been given to the individual, and not the vessel, and therefore no lien attached.

The trial court, after argument, decided as follows:

"It is contended by the defendant in this case that this engine and accessories were not sold to the defendant with any understanding in relation to where it was to be used, and that it was not furnished in such a sense as would make the statute in relation to water craft apply.  Be that as it may, I can imagine no case where the acts and conduct of the plaintiff would make it more apparent, nor could I imagine the case where the facts or circumstances would amount to a waiver, if this is not.  And therefore the court holds that the plaintiff in this case is not entitled to a lien."

Whereupon the jury were discharged, and a judgment was entered for the defendant.  The complainant has appealed.

After the appeal was perfected, the testimony of the complainant and of Peter Honne was taken on behalf of complainant, and that of Elizabeth Eaglesfield was taken in her own behalf, under the provisions of section 10826, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13662).  Such testimony has been certified to this court, and has been considered by us, in pursuance of the provisions of section 10825, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13661), without considering the objections taken to the last testimony of Mrs. Eaglesfield.

Before passing to the consideration of the questions urged by defendant, as reasons why the complainant

is not entitled to prevail, we notice the position of complainant relating to the surrender and cancellation of the notes offered in evidence. Under the statute, the hearing in this court is *de novo* upon the transcript and depositions, and further testimony taken as provided by the section above referred to.

Counsel upon both sides have discussed at length what the claim of complainant and his counsel was in the court below. We think that the position of complainant in the court below was not inconsistent with his position here, and we are disposed to take him at his word in what he states in his reply brief, viz.:

"However, in order that there may be no possible ground for mistake, I shall again state appellant's position. Appellant believes that he was, by the statute, given a lien on the boat Golden Girl, for the engine, accessories, and labor furnished in the building, fitting, and equipping of it, that he has never done anything to waive that lien, that in this proceeding he is seeking to enforce that lien, and that, in the acceptance of the bond furnished by appellee for the restitution of the boat, the boat was forthwith discharged from all liens, and that he must henceforth look to and rely upon the bond. Appellant did not believe, and did not contend, and does not now contend, that he still retains title to the engine and accessories. He does not claim title through or by virtue of the contract or notes. He has delivered up, and does now here deliver up, the notes and contract for cancellation."

It will be so considered, without further discussion.

1. Upon the first point urged by counsel for defendant, he relies upon the case of *Gibbs* v. *Hanchette,* 90 Mich. 657 (51 N. W. 691). It was there held that mechanics who, with knowledge of the status of the account, or with information thereof at their disposal, seek to secure a lien under Act No. 216, Laws of 1885, cannot be excused for a failure to file "a just and true statement of account of the demand due

them, over and above all legal set-off," as required by
section 2 of the act.

The statute we are here considering (section 10790,
3 Comp. Laws, 5 How. Stat. [2d Ed.] § 13626), re-
quires the complaint to state "the amount due over
and above all payments and discounts, as near as may
be, which shall be verified by affidavit in the same
manner as bills in chancery." Without holding that
there is any essential difference in the two statutes,
it should be noted that in the *Gibbs Case* this court
said:

> "The authorities very generally hold that where
> there is an honest mistake of fact, made in the honest
> belief of its correctness, courts will not for that rea-
> son hold that the lien is lost. But where claimants
> place upon record a statement which they know is not
> correct, the authorities are very uniform that the lien
> is lost."

We are of the opinion that the facts in the instant
case clearly distinguish it from the *Gibbs Case,* and
that the instant case is ruled by the following cases:
*McMonegal* v. *Wilson,* 103 Mich. 264 (61 N. W. 495);
*Lamont* v. *Le Fevre,* 96 Mich. 175 (55 N. W. 687);
*Scheibner* v. *Cohnen,* 108 Mich. 165 (65 N. W. 760);
*Hulburt* v. *Just,* 126 Mich. 337 (85 N. W. 872); *Mc-
Allister* v. *Des Rochers,* 132 Mich. 381 (93 N. W. 887).

We think there was no evidence of bad faith, and
the circumstance of delay in filing complaint explains
the error as an honest one.

2. Was complainant's right to a lien waived by the
fact that, in the contract and notes, title to the engine
and materials was retained? The record discloses
that the contract and notes used were the printed
forms generally used by complainant in his business.
There is no evidence that any claim was ever made
by virtue of the provisions, and no proceeding of any
kind was ever instituted to recover any part of the
property other than the instant suit, under the water

craft statute. It is uncontradicted that complainant has taken no step since the making of the papers to indicate a waiver of a lien. This court has held that the giving of a note is not a waiver of the lien under this statute. *Sarmiento* v. *The Catherine C.,* 110 Mich. 120-125 (67 N. W. 1085), and cases cited; *Delaney Forge & Iron Co.* v. *The Winnebago,* 142 Mich. 84-91 (105 N. W. 527, 113 Am. St. Rep. 566) ; 26 Cyc. p. 792.

We have held in cases of mechanics' liens that the retention of title is not inconsistent with the existence of the statutory lien. *Warner Elevator Manfg. Co.* v. *Building & Loan Ass'n,* 127 Mich. 323 (86 N. W. 828, 89 Am. St. Rep. 473), and cases cited. It was there said:

"But the authorities forbid the assumption that a reservation of title is inconsistent with the existence of a statutory lien, holding that there may be cumulative remedies, and consequently that absolute inseparability is not a condition to the existence of the statutory lien."

See, also, *Kirkwood* v. *Hoxie,* 95 Mich. 62, 66 (54 N. W. 720, 35 Am. St. Rep. 549).

In *Peninsular General Electric Co.* v. *Norris,* 100 Mich. 496 (59 N. W. 151), it was held that the fact that an electric company retained the title to an electric lighting plant, which it placed in a building, until it was paid for, would not deprive it of its statutory lien, or prevent the enforcement of the same—citing and quoting from *Case Manfg. Co.* v. *Smith* (C. C.), 40 Fed. 339, as follows:

"Instead of being inconsistent, it was merely additional security to that provided by the statute. It certainly does not establish, as matter of law, that, in thus retaining title to the machinery, complainant has waived its statutory lien upon the lot of ground or premises on which the machinery was placed."

The above language it seems to us is as appropriate here as in the case of a mechanic's lien. See, also, *Fuller* v. *Byrne*, 102 Mich. 461 (60 N. W. 980); *Pettyplace* v. *Manufacturing Co.*, 103 Mich. 155 (61 N. W. 266); *Presque Isle Sash, etc., Co.* v. *Reichel*, 179 Mich. 466 (146 N. W. 231). See, also, the case of *D. B. Steelman* (D. C.), 48 Fed. 580, where the party furnishing materials, took cash in part payment and notes secured by mortgage on one-half of the vessel. It was held that the mere fact of taking a mortgage did not operate as a waiver of the maritime lien, and authorities are cited. *The Theodore Perry*, Fed. Cas. No. 13,879; *The Hilarity*, Fed. Cas. No. 6,480.

In 26 Cyc. p. 791, it is said:

"A lien once vested may be lost in various ways. * * * But the burden is on the party asserting such a waiver to prove it, as this would be a matter of defense."

The lien in water craft is intended for the same purpose as the lien of mechanics, to protect persons furnishing labor or materials. We are of opinion that retaining title, as in this case, was not a waiver of the lien.

3. It is urged, however, that here the credit was given to the individual and not to the vessel, and hence no lien attached. We are of opinion that this proposition was answered by this court in *Delaney Forge & Iron Co.* v. *The Winnebago, supra.* At page 91, 142 Mich. (at page 530 of 105 N. W., 113 Am. St. Rep. 566), Justice MCALVAY, speaking for the court, said:

"The distinction between maritime and nonmaritime liens must not be overlooked in this case. It cannot with accuracy be said that materials, furnished, as in this case, where a statute of the State gives a nonmaritime lien, are furnished upon the credit of the vessel. Such language is only exact where refer-

ence is had to a maritime lien. The statutory lien attaches by operation of law, where the materials furnished are within the provisions of the statute. The lien attaches as an incident to the contract, and, unless such lien is waived, the provisions of the statute may be invoked for its enforcement."

It clearly appears in this case that complainant was to furnish, and did furnish, defendant with the marine engine in question to be used in this particular boat. Its name was afterwards changed from the "Eaglesfield" to the "Golden Girl;" of this there is no question.

It is also contended that complainant did not furnish materials for this vessel within the meaning of the statute; that he contracted to furnish one of his completed engines for a stated sum; that the engine when installed was not a part of the boat. We think that the case of *Globe Iron Works* v. *The Steamer*, 100 Mich. 583 (59 N. W. 247, 43 Am. St. Rep. 464), is a complete answer to this claim. We quote:

"This is a proceeding to enforce a lien under the water craft law of this State. * * * The claim is for one boiler and attachments, one smokestack and umbrella with attachments, furnished and used in the building, fitting, furnishing, and equipping of the steamer 'John B. Ketchum 2nd.' "

The lien was enforced.

It should be stated that, during the trial below, the claim of Wm. Brummeler's Sons Company, intervening complainants, was adjusted and their claim dismissed. We are aware of the act of Congress of June 23, 1910 (36 U. S. Stat. 605), entitled "An act relating to liens on vessels for repairs, supplies, or other necessaries." By section 5 of that act it is provided:

"That this act shall supersede the provisions of all State statutes conferring liens on vessels in so far as the same purport to create rights of action to be

enforced by proceedings in rem against vessels for repairs, supplies, and other necessaries."

We do not understand that that act deprives the State court of jurisdiction to enforce a contract, for claim, on account of work done, or materials furnished, in or about the building, fitting, furnishing, or equipping of a boat during its construction, as in this case. Such claims and contracts are nonmaritime.

Upon the merits of the case, we are of opinion that the complainant has sustained the burden of proof. The defendant Elizabeth Eaglesfield, while complaining of defects in the engine, has not given us any basis upon which to estimate her damages. She gave no definite amount as to damages suffered, and she continued to use the engine down to the time of trial without complying with the conditions of the warranty.

We think the complainant has established his lien for the amount of the notes and the account of $42.65, and interest as above stated.

For the errors pointed out, the judgment of the court below must be reversed. By section 10827, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13663), it is provided that this court shall hear and determine the appeal, and shall have power to reverse, affirm, or modify the judgment or decree below, and to make such other order as shall be just. The record shows that the boat has been discharged by a statutory bond in the penal sum of $2,000, with Margaret M. Parsons as surety. Section 10815, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13651), provides that in case judgment or decree passes for complainant, in such case, the same shall be rendered and entered against the principal and surety in the bond.

Judgment will be entered in the court below for complainant for the amount of such notes and account above indicated against said defendant Elizabeth

Eaglesfield and said surety, with costs to be taxed, upon filing a certified copy of the order of this court as indicated by section 10828, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 13664).

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.