ENTERPRISE BED CO. *v.* THE SOUTH AMERICAN.

1. MARITIME LIENS—NOTICE—PRINCIPAL CONTRACTOR.
    Under the statute creating a lien upon water craft for all
    debts contracted in the building or equipping of such craft,
    where the principal contractor is concerned, no notice
    whatever is required to be given to the owner. 5 How.
    Stat. (2d Ed.) § 13625, 3 Comp. Laws 1915, § 14892.

2. SAME—NOTICE—"TIMELY NOTICE"—SUBCONTRACTOR.
    A notice under this statute, creating a lien in favor of a
    subcontractor, whether verbal or written, is "timely" if
    it is received by the owner of the vessel at a time prior
    to payment by the owner to the principal contractor.

3. SAME—NOTICE—PAYMENT BY OWNER.
    Where the owner received a letter from plaintiff, a sub-
    contractor, containing a notice of plaintiff's claim and
    that it was unpaid, a lien attached to the vessel in favor
    of the plaintiff by operation of the statute, and thereafter
    the owner could not relieve itself of liability to plaintiff
    by payment to the principal contractor.[1]

Appeal from Wayne; Hally, J. Submitted October
12, 1916. (Docket No. 144.) Decided December 22,
1916.

Proceedings by the Enterprise Bed Company to en-
force a lien under the water-craft law against the
steamer South American, the Chicago, Duluth & Geor-
gian Bay Transit Company and the Great Lakes Engi-
neering Works. From a decree for complainant, de-
fendants appeal. Affirmed.

*William J. Whinery* and *Selling & Brand,* for com-
plainant.

*Campbell, Bulkley & Ledyard,* for defendants.

[1]As to what contracts will support maritime liens, see note
in 70 L. R. A. 353.

This action was brought under chapter 298, 3 Comp. Laws (3 Comp. Laws 1915, chap. 247), providing for the "collection of demands against water craft." In the spring of 1914 the defendant Great Lakes Engineering Works was engaged in the construction of a ship called the "South American" for the defendant the Chicago, Duluth & Georgian Bay Transit Company. Under the contract between the engineering works and the transit company the engineering works was to furnish all labor and material that went into the construction of the vessel with the exception of its furniture. The contract for the furniture for the vessel was let to a concern known as the Associated Furniture Manufacturing Company. That company, acting through its representative, Mr. Rice, contracted with the plaintiff for the bed springs and beds to be used in said boat, and about April 20, 1914, Mr. George C. Lochlin, president of the plaintiff company, visited the plant of the Great Lakes Engineering Works where the boat was under construction, and was there shown over the vessel by Mr. Zeitsch, superintendent of the vessel line, and was instructed to take measurements and ascertain the number of beds required. This was done, and later the plaintiff manufactured all of the beds and springs required for the complete fitting out of the said steamship. It appears from the record that the defendant transit company had constructed the steamship North American the year previous, and that the beds for that ship had been supplied by the plaintiff under a contract made by the transit company with the Associated Furniture Manufacturing Company by Rice—the same kind of a contract as the one involved in the case at bar. It further appears that at the time the goods for the South American were ready for shipment the Furniture Manufacturing Company had not fully paid the plaintiff for the shipment made the year before for the furnishing of the

North American. This being the situation, and before shipment of the goods was made, plaintiff's president had a conversation with Mr. Davis, the president of the defendant transit company. It is undisputed upon the record that at this conversation the question of payment of the plaintiff's bill for the beds was under discussion, but Mr. Lochlin and Mr. Davis in their testimony give accounts thereof diametrically opposed to each other. It is the claim of plaintiff that Mr. Davis agreed and instructed his bookkeeper, in the presence of Mr. Lochlin, to withhold sufficient money from the Associated Furniture Manufacturing Company to cover the bill of the plaintiff, while Mr. Davis claims that he instructed Mr. Lochlin to go to Mr. Rice and secure an assignment from Mr. Rice of the amount due, and that thereafter Lochlin returned and advised him, Davis, that he had made satisfactory arrangements with Rice, and that an assignment would not be necessary. Following this interview plaintiff wrote to the defendant transit company the following letter:

"May 29th, 1914.

"Mr. R. C. DAVIS,
  "c/o Chgo., Duluth & Georgian Bay Trans. Co.,
    "109 W. Adams St., Chicago, Ill.
  "*Dear Sir:* Along the line of the conversation between the writer and yourself a few days ago we would very much appreciate your advising us in advance when you will make the payment to the Associated Furn. Mfrs. covering the present boat order.

"We tried to carry out your suggestion by seeing Mr. Rice and having him allow us to bill you direct for these springs, but according to his usual custom he was absent from the office during the entire time that we waited for him and sooner than disappoint your people we took a chance and shipped the car out, billing same to the Associated Furn. Mfrs.

"Had it not been that you need these springs at once and that our holding up the order would cause you more trouble than him, we would have been tempted

to hold shipment until we could get some satisfaction, but we trust that you will co-operate with us as above so that we can have some chance of getting our money as otherwise it looks like a good long wait.

"Yours very truly,

"ENTERPRISE BED CO.,

"Sec'y."

The amount of plaintiff's claim, $1,271, and interest, is not in dispute. This sum was paid neither by the Associated Furniture Manufacturing Company nor by the defendant transit company, and it is claimed by the defendant transit company that payment in full was made by it to the Associated Furniture Manufacturing Company, and the voucher showing such payment was introduced in evidence by the defendant as follows:

CHICAGO, DULUTH & GEORGIAN
BAY TRANSIT CO.,         TO ASSOCIATED FURNITURE MFRS.
    Chicago, Illinois.                          Chicago.

| 1914 Date. | Particulars. | Amount. |
|---|---|---|
| July 28. | On Account Bills rendered | $2,500. |
| Correct | Entered | Approved for payment |
| . . . . . . . . . . . . . . . . . | . . . . . . . . . . . . . . . . | . . . . . . . . . . . . . . . . |

Please sign and return voucher immediately without erasure or alteration. If settlement is unsatisfactory, return check as well as voucher.

  Chicago, Duluth & Georgian Bay Transit Co., Chicago, Illinois.

$2,500.00.

 Received of Chicago, Duluth & Georgian Bay Transit Co., twenty-five hundred —— Dollars in full of the above accounts. July 28th, 1914.

Associated Furniture Mfrs.

   C. J. Rice.

N. B. The above receipt must be dated and signed by the party in whose favor this voucher is made; or, when signed by another party, the authority for so doing must·in all cases be attached to the voucher.

Indorsement on back:

Month, July, 1914.                          Voucher No. 1210
                         $2500.00
              In favor of ASSOCIATED FURN. MFRS.
Paid  July  28th, 1914.                  Check  No.  Ccy.
                                         A/c  R.  C.  D.
                     Distribution
Accts. Payable ............................. $2500.

Being interrogated as to the details of this payment, the president of the defendant transit company, Mr. Davis, testified as follows:

"*Q.* Mr. Davis, what do you claim that you paid or in what manner do you claim you paid this $2,500 that is represented by the receipt marked Exhibit 11?

"*A.* Not being the bookkeeper of the company, I could not say just what manner it was paid in, whether it was paid in cash, or whether it was paid by check, or by what manner it was paid.   *   *   *

"*Q.* Didn't you and Mr. Rice have an arrangement whereby you were security for Mr. Rice?

"*A.* Where I was security for Mr. Rice?

"*Q.* Yes; either you or your company had indorsed notes for Mr. Rice?

"*A.* No; our company had never indorsed any notes for Mr. Rice.

"*Q.* Didn't you individually?

"*A.* Mr. Rice had put up some collateral at a bank for which I had gone good.   I had not indorsed it, mind you.   I had not put my name upon the note, but I had simply said to the bank, 'If you want to make this loan, all right.'   *   *   *

"*Q.* Your arrangement was such with Mr. Rice on this indebtedness to the bank and the bank were attempting to hold you on that, weren't they?

"*A.* No; the bank never attempted to hold me on anything.

"*Q.* Was not this money paid to the bank and not to the Associated Furniture?

"*A.* No; it was not.

"*Q.* Who paid the interest on Mr. Rice's indebtedness to the bank?

"*A.* Mr. Rice paid this interest up to a certain time.

"*Q.* He got the money from you to do it with, didn't he?

"*A.* No; he did not.

"*Q.* I show you a paper introduced in evidence, which we will ask to have marked Exhibit 12, I ask you to look at it.   State if that is one of the papers you have produced here.

"*A.* Yes; that is a voucher of our company.

"*Q.* I show you also a check that was folded in that Exhibit 12.

"*A.* No; that is not the book that I referred to at all, or the check.

"*Q.* These were given to pay notes, weren't they?

"*A.* They were; yes.

"*Q.* Of Mr. Rice?

"*A.* Yes.

"*Q.* He receipted that interest.   That money was paid on his note?" (Argument of Counsel.)

"*Q.* Concerning this voucher that was introduced in evidence as Exhibit 11?

"*A.* For $2,500?

"*Q.* Yes, I wish to call your attention to the indorsements upon this, and then ask again whether or not you did not have an arrangement whereby you were on certain notes and were held liable for Mr. Rice's notes.   The part I call your attention to that on this voucher it is marked, 'Account of R. C. D.'   That means you, doesn't it?

"*A.* That means me.     *   *   *

"*Q.* Why was that carried to your account?

"*A.* If you want it I will give you a full explanation of it;     *   *   *     give you the names of the banks and everything.     *   *   *     Mr. Rice along in the fall of 1913 needed some funds, and he came to me to get it.   'I haven't any money personally to give you,' but, I said, 'I will call up the bank and ask them.'   He had collateral that was well worth what he wanted to borrow, and he wanted to borrow $3,000.   So he went around to one of the banks that we do business with, told them what he wanted, $3,000.   The president of the bank called me up and says, 'How about this?' I says, 'If you want to give it to him, all well and good, although he is not a customer of your bank.'   So he loaned him $3,000.   I says, 'Do you want my indorse-

ment?' He said, 'Oh, no; if you say it is all right, it is all right.' Mr. Rice in the course of the renewal of that note on several occasions—I could not tell just how many—paid $500 on the principal, and paid the interest up to a certain point, and then absolutely failed to make good on the remaining $2,500. Well it was a bank that I was doing business with and that I was more or less under obligations to, so when I saw that Rice could not make good, I had to, and I took up Mr. Rice's note, and when. Mr. Rice was furnishing the goods for the South American I thought, 'This is my opportunity to get my $2,500 back,' and you have got it there in the note.

"*Q.* He simply receipted for $2,500?

"*A.* Yes.

"*Q.* Had taken up his note?

"*A.* Yes."

In another part of his testimony we find this:

"*Q.* The fact that you made settlement of this $2,-500 in the manner you have stated, that accounts why you have no check?

"*A.* Simply the transaction. Mr. Rice owed me that much and that was my chance to get it. I took advantage of the opportunity."

Just before the commencement of suit the following letter was written by the attorney for plaintiff to the defendant transit company:

"May 8th, 1916.
"Chicago, Duluth & Georgian Bay Transit Co.,
          "Chicago, Illinois.

"*Dear Sirs:* I write you as attorney for the Enterprise Bed Company of Hammond, Indiana, concerning the amount due for bed springs furnished for the steamship South American, amounting to $1,271.00. As you know, this order was furnished you and shipped to River Rouge (Detroit, Michigan), the shipment being made to you on May 28th, 1914. No part of this bill has been paid, and the company looks to you for payment under the statute of the State of Michigan, which gives the company a lien on the boat for all such furniture and materials furnished for its equipment.

I also call your attention to the fact that Mr. Scott, of the Enterprise Bed Company, notified your president and general manager, Mr. R. C. Davis, of this claim, before the actual shipment of the goods was made to you, and also later confirmed this notice by letter. Your company is also liable for this under the Federal statute, which gives a lien on the boat in cases such as this. We hope that it will not be necessary to begin any action against the steamship, South American, but unless payment is made I am authorized to take such steps as are necessary. Before incurring any costs, however, I write you asking that you kindly make payment of the account without further delay and thus avoid any costs and expenses of yourself or to this company. Please advise me by early mail what you desire to do in this regard.

"Yours very truly,

"WJW—EC                      WM. J. WHINERY."

The relevant part of the governing statute (5 How. Stat. [2d Ed.] § 13625, 3 Comp. Laws 1915, § 14892) is as follows:

"Every water craft * * * shall be subject to a lien thereon * * * for all debts contracted by the owner or part owner, master, clerk, agent or steward of such craft * * * on account of work done or materials furnished by mechanics, tradesmen, or others, in or about the building, repairing, fitting, furnishing or equipping such craft; *Provided,* That when labor shall be performed or material furnished as aforesaid, by a subcontractor * * * and the same is not paid for, said person or persons may give the owner or his agent, or the master or clerk of said craft, timely notice of his or their said claim, and from thenceforth said person or persons shall have a lien upon such craft *pro rata* for his or their said claims, to the amount that may be due by said owner to said original contractor for work or labor then done on said watercraft."

The learned circuit judge who heard the case without a jury directed a verdict in favor of the plaintiff upon the ground that no payment had been made by

the defendant transit company to the Associated Furniture Manufacturing Company, and that therefore the letter of May 8, 1916, was "timely notice" within the meaning of the statute.

In this court defendant contends:

(1) That the "timely notice" referred to in the statute means written notice.

(2) No such notice was given by plaintiff to the transit company.

(3) That the transaction between Rice and the Associated Furniture Manufacturing Company and Davis, president of the defendant transit company, operated as payment, and therefore that a verdict should have been directed in favor of the defendant.

On behalf of appellee it is claimed:

(1) That the notice required by the statute is not a written notice.

(2) That if the statute does require a written notice such notice was given to defendant transit company.

(3) That the transaction evidenced by the receipt from the Associated Furniture Manufacturing Company to the transit company does not amount to payment.

BROOKE, J. (*after stating the facts*). Much argument is indulged in by the attorneys for both parties and many cases are cited upon the question as to whether the "timely notice" mentioned in the statute must be a written notice. Under our view of the case it becomes unnecessary to construe the statute in this regard. The statute creating the lien is peculiar, and, so far as the principal contractor is concerned, no notice whatever is required. The lien is established by the statute as soon as the work is done or material is furnished. *Delaney Forge & Iron Co.* v. *The Winnebago*, 142 Mich. 84 (105 N. W. 527, 113 Am. St. Rep. 566) ; *Perkins* v. *The Golden Girl*, 185 Mich. 200 (151 N. W. 660). By the proviso the lien can only attach in favor of a subcontractor when he has given to the

owner, agent, master, or clerk of the said craft, " 'timely notice' of his or their said claim." As soon as the owner has received such "timely notice" the subcontractor "shall have a lien upon such craft *pro rata* for his or their said claims." A notice under this statute, whether verbal or written, is clearly "timely" if it is received by the owner at a time prior to payment by the owner to the principal contractor. It is conceded upon this record that at the time of the conversation between Lochlin, president of the plaintiff company, and Davis, president of the transit company, and on May 29, 1914, when the first letter was written, the defendant transit company had not paid the Associated Furniture Manufacturing Company for the goods in question, indeed such payment, if made at all, was not made until July 28, 1914, two months later. That Lochlin interviewed the president of the defendant transit company with the purpose of securing payment of the goods about to be shipped is not open to dispute upon this record.

Assuming, then (although not determined), that a written notice is required under this statute, we come to a consideration of the letter of plaintiff dated May 29, 1914, to the defendant transit company. That letter refers to the conversation held between Lochlin and Davis a few days earlier, notifies the defendant company of the writer's failure to secure Mr. Rice's consent to the billing of the goods directly to the transit company, and requests defendant's co-operation with reference to the debt. It is our view that this letter satisfies the requirement of the statute with reference to notice, even though such notice must be in writing. It should be noted that the proviso of the statute does not refer to notice of a claim of lien, but simply requires "timely notice" to be given *of a claim* after which the lien attaches by virtue of the statute, in this respect differing from the mechanic's

lien law (chapter 296, 3 Comp. Laws, 3 Comp. Laws 1915, chap. 244). It is very clear that the letter of May 29, 1914, gave to the defendant transit company circumstantial notice of the plaintiff's claim. As soon as the defendant transit company received notice of the plaintiff's claim, and that the same was unpaid, which information was conveyed to it in that letter, a lien attached to the vessel in favor of the plaintiff by operation of the statute, and thereafter the defendant transit company could not relieve itself of liability to the plaintiff by payment to the principal contractor. In this view of the case it becomes unnecessary for us to examine into the transaction between Rice, representing the Associated Furniture Manufacturing Company, and Davis, the president of the transit company, or to determine whether such transaction should be held to amount to payment.

A verdict having been properly directed in favor of the plaintiff for the amount of the claim, the judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. PERSON, J., did not sit.