### HULBURT *v.* JUST.

1. MECHANICS' LIENS—EXCESSIVE CLAIM—GOOD FAITH.

A disparity between the amount to which a lien claimant is entitled and that for which he filed his claim of lien, though very great, will not defeat his lien for the true amount, unless the overstatement was made in bad faith.

2. SAME—CREDITS—BANKS AND BANKING—OVERDRAFT.

A former cashier of a bank, whose position was not yet filled, and who still presumed to speak with authority, instructed the assistant cashier to pay the checks of a certain contractor then building a house for such cashier.   The contractor overdrew his account, the checks being charged to him.   There was no testimony that the contract between the contractor and

126 MICH.—22.

the bank was other than it purported to be on its face,—an overdraft,—although the assistant cashier answered affirmatively a question as to whether the account was not in fact the cashier's. *Held*, that, it not appearing that credit was given exclusively to the cashier, the contractor was legally bound on the checks, and the overdraft could not be deemed a payment to the contractor in diminution of his claim of lien.

Appeal from Ionia; Davis, J. Submitted December 4, 1900. Decided April 25, 1901.

Bill by George D. Hulburt against William J. Just and Isaac N. Just, administrators of the estate of Josiah E. Just, deceased, the Ionia County Savings Bank, Dollie B. Van Devanter, and others, to enforce a mechanic's lien. From a decree for complainant, defendant Van Devanter appeals. Modified.

*Chaddock & Scully*, for complainant.

*William O. Webster* (*Allen B. Morse*, of counsel), for appellant.

*A. A. Ellis*, for defendant Ionia County Savings Bank.

Montgomery, C. J. This is an appeal from a decree establishing a mechanic's lien in favor of the complainant. The appeal is taken by Dollie B. Van Devanter, mortgagee.

The premises involved were the property of Josiah E. Just, who died while the building for the construction of which the lien is asserted was in the course of construction. After the death of Mr. Just, the complainant offered to go on and complete the building; but the administrators preferred to have operations suspended, and this appears to have been assented to. Complainant filed a claim of lien for $1,938.78, and it is strenuously insisted by defendant's counsel that the record shows that this claim was fraudulently made for an amount largely in excess of the amount due. The circuit judge found a lien in favor

of complainant for the sum of $760.20.   The disparity be-
tween the allowance and the claim is very great, but the
complainant accounts for it in the following manner:
When work was suspended on the building, complainant
had on hand material which he had purchased for the
completion of the contract amounting in value to $717.05,
which, at the time of swearing to this claim of lien, he ap-
pears to have treated as a part of the building, and a por-
tion of the expense already incurred.   We think this was
not evidence of bad faith.   It also appears that, in figuring
the amount due, complainant, through an oversight, failed
to credit the Just estate for an item of $75 for a change in
the plans.   This leaves a discrepancy of $386.53; but it is
evident that the circuit judge disallowed certain items of
extras on the ground that the contract had not been
changed in writing, and that he did not adopt the com-
plainant's estimate as to the cost of completing the build-
ing.   It does not follow that complainant's claim in this
respect was not made in good faith, and, on the whole
record, we are not convinced of his bad faith in filing the
claim.   The mere overstatement, unless made in bad
faith, does not defeat the lien.   *Gibbs* v. *Hanchette*, 90
Mich. 661 (51 N. W. 691); *Scheibner* v. *Cohnen*, 108
Mich. 165 (65 N. W. 760).

During the progress of the work, complainant overdrew
his account at the Ionia County Savings Bank $1,300.
Defendant's counsel contend that the money was drawn
from the bank under circumstances creating no liability
on the part of the complainant to the bank, but that the
circumstances show that the credit was extended to Josiah
E. Just.   Mr. Burletson, the assistant cashier of the
bank, testified as to those payments as follows:

"*Q.* When a check came in while Mr. Just was absent,
— check of Hulburt drawn on this account,— I suppose
you paid it without looking to see whether Hulburt had
overdrawn his account or not?

"*A.* We were instructed to.

"*Q.* Who instructed you to do this?

"*A.* Mr. Just.

"*Q.* So that in fact this account of $1,300 was Just's account, wasn't it?

"*A.* Yes, sir; that is where it rightly belongs.

"*Mr. Ellis:* What do you mean by that,—that it was Just's account?' It was money he orally guaranteed to the bank?

"*A.* That was about it.

"*Q.* Money that Hulburt drew, drawn on Hulburt's checks?

"*A.* Drawn by Mr. Hulburt.

"*Q.* The only thing the bank had to show for it was the oral guaranty of Mr. Just that he would make it good?

"*A.* He simply instructed us to pay Mr. Hulburt's checks.

"*Q.* That is all you know about it?

"*A.* Yes, sir.

"*Mr. Morse:* Did you pay Mr. Hulburt's checks on Hulburt's responsibility or on Just's order?

"*A.* On Mr. Just's order.

"*Mr. Ellis:* Whom did you charge them to?

"*A.* Mr. Hulburt.

"*Q.* And the account was kept with Hulburt?

"*A.* Yes, it was in Hulburt's name.

"*Q.* When the checks were overdrawn, or paid, then Just would deposit more money?

"*A.* Yes, sir."

There was no testimony that the contract between complainant and the bank was other than it purported to be on its face; that is, an overdraft. In construing the testimony as to the effect of Just's instructions to Burletson, it should be stated and kept in mind that Just had been cashier of the bank, and, although he had resigned to take a position as State banking commissioner, the position of cashier was left vacant, and he still presumed to speak with authority. We do not find that credit was given exclusively to Just, but think that complainant was legally bound on these checks.

The circuit judge found due at the date of the decree $760.20, including interest, or about $700 of principal. We think the best testimony fixes the amount of the lien

without interest at $506.56.   The decree will be modified
to this extent, and affirmed.   No costs will be allowed in
this court to either party.

The other Justices concurred.