Submitted on briefs July 19, modified November 15, 1921.

## BARTELS *v.* McCULLOUGH ET AL.

(201 Pac. 733.)

**Mines and Minerals—Lien Notice Held Sufficient.**

1. Notice of lien *held* regular in form and sufficient to support a decree on adequate testimony.

**Mechanics' Liens—Intentional or Negligent Overstatement of Amount Due Avoids Lien.**

2. Where a mechanic's lien claimant has intentionally, or through culpable negligence, overstated the amount due him, such overstatement will render the whole lien void; but a mere mistake in one item will not necessarily do so, when it is evident that no fraud was intended, and where defendant has not been misled to his prejudice in making his defense.

**Mines and Minerals—Overstatement by Mistake of Amount Due Held not to Avoid Lien.**

3. That lien claimant by mistake in his notice overstated the amount of his claim, causing a difference of $43 in a claim on a long account, amounting to $362 after allowing for the mistake, *held* not to avoid the whole lien, where defendant was not misled or injured by it.

---

2. For authorities discussing the question of effect of filing an excessive mechanic's lien, see comprehensive notes in **Ann. Cas.** 1914D, 878; 29 **L. R. A. (N. S.)** 305.

**Trial—Plaintiff's Evidence not Rendered Incompetent Because of Reference to Memoranda.**

4. In a mechanic's lien suit, that plaintiff in testifying as to the items of his account referred to a memorandum in which he had copied them from another book wherein they had been originally entered, *held* not to make his testimony incompetent; there being no objection or demand for the original memorandum.

**Mines and Minerals—Cyaniding and Assaying Ore Held Lienable.**

5. Services in cyaniding and assaying ore at a mine, requiring some physical labor as well as skill, and being necessary to the successful prosecution of the work of searching for and working the ore, *held* lienable.

**Mechanics' Liens—Burden of Proving Nonpayment is upon Lienor.**

6. In mechanic's lien cases, the burden of proving that the claim has not been paid is upon the person asserting the lien, particularly where the contract out of which the lien arose was made with some-one not the owner of the property upon which it is sought to fasten the lien.

**Mechanics' Liens—Notice not Evidence of Nonpayment.**

7. In mechanic's lien suits, the notice of lien is competent to prove that when filed the lienor had filed claim of lien regular in form and substance for amounts asserted to be due, but it is not competent to prove nonpayment of the claim for which lien is filed.

From Linn: GEORGE G. BINGHAM, Judge.

In Banc.

This is a suit to foreclose certain mechanics' liens upon a group of mining claims in Lane County. The plaintiff claims a lien on his own behalf for $405.70, one as assignee of E. O. Pooler for $253.69, and another for $445.76 as assignee of Lester Powers. All of the notices assert the respective liens on account of work and labor performed in the mines and in search of precious metals in said mines, or in mining and milling ores. The work was performed in pursuance of a contract with McCullough and Atkinson, who were in charge of said mines and were the reputed owners thereof. In particular it may be observed that the lien notice of the plaintiff claimed that he did work as follows:

"That I did and performed general work in and upon the tunnel and in the mill and about the mill and did assaying on said Great Northern Claim. That I was employed to do such work by T. A. McCullough aforesaid, representing himself as one of the owners and agent for the owners of said premises and property, representing himself as the general manager and superintendent.

"That I performed 8 days' work in the month of June, 1917, at the agreed wage and price of $3 per day. That I worked 30 days in July, 19 days in August, 25 days in September and 27 days in October, 1917, at the agreed price and wage of $3.25 per day. That I worked 30 days in November and 28 days in December, 1917, and 28 days in January, 1918, and 10 days in February, 1918, at the agreed wage and price of $4 per day.

"Said work comprising 205 days, aggregating the sum of $736.25. It was also agreed and understood that I should pay $1 per day for board and lodging to be charged against my wages, and that I should pay the further sum of 1 cent per day for state industrial accident fund, $2.05.

"That I commenced work in the month of June, 1917, as aforesaid, and did and performed work as herein stated to and including the 10th day of February, 1918, under the instructions and by the authority of said T. A. McCullough, and that sixty days have not elapsed since I ceased to do and perform such labor and work. That no part of said sum of $736.25 has ever been paid excepting the following charged against my account, to wit:

| | |
|---|---:|
| Board........ ......... .............$205.00 |
| State Industrial Accident [Fund]....... | 2.05 |
| Cash paid in June, 1917................ | 16.00 |
| Cash paid in July, 1917................. | 67.50 |
| Cash paid in August, 1917.............. | 40.00 |
| Total..............$330.55 |

"That there is now due, owing and unpaid from said George Atkinson and T. A. McCullough to me, the said sum of $405.70 and there are no just credits or offsets against the same."

The other notices are similar except that the labor of assaying is not mentioned and different credits are given according to the nature of the circumstances. The notices of lien were filed April 9, 1918. The assignments of Pooler and Powers to the plaintiff were dated August 10 and August 12, 1918, respectively.

Williams as trustee was the legal owner of the mines, and McCullough and Atkinson were in charge and working them under an option to purchase, when the work was performed and the liens filed. McCullough and Atkinson made default and Williams answered, setting up his ownership and denying generally the allegations of the complaint. Upon the trial there was a decree for the plaintiff, and the defendant Williams appeals.       MODIFIED.

For appellant there was a brief over the name of *Messrs. Williams & Bean.*

For respondent there was a brief over the name of *Mr. J. S. Medley.*

McBRIDE, J.—1. The notices of lien are regular in form and upon adequate testimony are sufficient to support the decree. On the trial, plaintiff testified positively to his account, except that he stated that his wages for November and December, 1917, were $3.25 per day instead of $4, practically admitting an error in the lien notice of $43. This discrepancy was never called to his attention and it is now claimed that his notice is not a true statement and is void,

and that for this reason he should not recover anything.

2. There is abundant authority in this state and elsewhere for the proposition that where the claimant has intentionally or through culpable negligence overstated the amount due him, such overstatement will render the whole lien void: *Nicolai* v. *Van Fridagh,* 23 Or. 149 (31 Pac. 288); *Lewis* v. *Beeman,* 46 Or. 311 (80 Pac. 417); *Equitable Savings & Loan Assn.* v. *Hewitt,* 55 Or. 329 (106 Pac. 447). This rule is of particular application in cases where the work is done at the instance of a contractor or other person only constructively, or as a matter of statute the agent of the owner, the reason being that in such cases the owner has no opportunity to know the length of time the claimant worked, the wages agreed upon and the payments made, and is not in a position to controvert exorbitant claims of which he has no notice; and that the intentional or negligent overstatement of a claim is at least a constructive fraud as to him.

But it does not follow that a mere mistake in an item of a claim necessarily renders the whole lien void, when it is evident that no fraud is intended and where it has not misled the defendant owner to his prejudice in making his defense: See *Rowland* v. *Harmon,* 24 Or. 529 (34 Pac. 357); *Harrisburg Lumber Co.* v. *Washburn,* 29 Or. 150, 170 (44 Pac. 390); *Allen* v. *Elwert,* 29 Or. 428, 433 (44 Pac. 824); *Cooper Mfg. Co.* v. *Delahunt,* 36 Or. 402, 407 (51 Pac. 649, 60 Pac. 1); *Mason* v. *Germaine,* 1 Mont. 263; *Black* v. *Appolonio,* 1 Mont. 342; *Palmer* v. *McGinness,* 127 Iowa, 118 (102 N. W. 802); *Fairbairn* v. *Moody,* 116 Mich. 61, (74 N. W. 386, 75 N. W. 469); *Hurlburt* v. *Just,* 126 Mich. 337 (85 N. W. 872); *Kendall* v. *Fader,* 99 Ill.

App. 104; *Marston* v. *Kenyon*, 44 Conn. 349. All the above cases were decided upon statutes similar to ours. In many of the states, Massachusetts and California, for instance, it has been provided by statute that an unintentional misstatement of the amount of a claim should not render the claim void, and these statutes make decisions from such states inapplicable here. Decisions from several states take the opposite view, notably the earlier cases in Massachusetts, but liens in that state were then enforced at law and not in equity, which accounts perhaps for the extremely technical holding of the courts of that state, finally corrected by legislation. The cases last above cited seem in accordance with the true spirit of equity and as such appeal to our judgment.

3. To apply them to the case at bar, it may be said that there is not the slightest indication that the claimant Bartels had any fraudulent intent to swell his claim beyond what was justly due him. The account was a long one, consisting of many items, and he was the only witness called on either side of the case. Had his intention been to claim fraudulently $43 more than was due him, he had only to make his testimony square with his statement in the notice of lien, and it is due to his testimony that Williams discovered that the notice stated a greater sum than was actually due. The discrepancy was not called to his attention on the trial and was probably then unnoticed by him or his attorney. The defendant was in no way misled or injured by it. By his general denial he had put in issue the fact that plaintiff did any work at any wage, that he had any lien, or that any amount was due him. These issues would have been tried in any event. There was no controversy as to particular items or as to particular payments. And

it is more fair to presume a not unnatural mistake than to assume that plaintiff had a fraudulent intent in the notice.

In *Mason* v. *Germaine, supra,* the court discussing this subject under a similar statute remarked:

"The fact that the complaint and notice of lien claimed as due plaintiffs a larger amount than that found by the court, will not destroy their lien for the amount actually due, unless there be a fraudulent intent in filing the same, which must be proved and will not be presumed."

This statement appears to us to be fair and equitable, and we adopt it, with the reservation, however, that there may be cases where the negligence in preparing the notice is so gross and palpable or has so misled the defendant as itself to raise a presumption of intentional fraud, or has occasioned such action by a defendant in the premises as to preclude the plaintiff from any right to relief in equity. We do not find these conditions in this case, and we are not disposed to fine plaintiff $362 for making a mistake of $43 in the amount claimed in his notice.

4. It is urged that the testimony of the witness Bartels is incompetent because in testifying he referred to a book or memorandum in which were set down the items of his account. No objection was made while he was testifying on the direct examination, but upon cross-examination he testified in substance that he kept an account of his time in a book and that before he came out he checked up the account in his book with the time-book of the defendants McCullough and Atkinson; and that when his book became old he afterwards copied the account into the book to which he had referred while testifying. The book was not offered in evidence but seems to

have been used by the witness at least some of the time to refresh his memory, without any objection being made thereto at any time, so far as the claim of the witness was concerned. Neither was there any demand for the original memorandum of which the document presumably used by the witness to some extent at least to refresh his memory, was a copy. Under all the circumstances we are of the opinion that there was competent evidence to support plaintiff's claim so far as it related to the lien for his own services.

He used a similar copy of a like memorandum in testifying as to the claims of Pooler and Powers, and a motion was made to strike out his testimony in regard to their liens, but in view of what we hold and shall hereafter discuss in relation to those claims, it is unnecessary to consider that matter further.

5. It is objected that the services rendered by the witness in cyaniding and assaying ore at the mine are not lienable, but we are of the contrary opinion. Both required some physical labor as well as skill and both were necessary to the successful prosecution of the work of searching for and working the ore. This is a much stronger case in favor of the liens than *Flagstaff etc. Co.* v. *Cullins,* 104 U. S. 176 (26 L. Ed. 704, see, also, Rose's U. S. Notes); or *Willamette Falls etc. Co.* v. *Remick,* 1 Or. 169, in which liens were upheld. The case of *Durkheimer* v. *Copperopolis Copper Co.,* 55 Or. 37 (104 Pac. 895), is not in point. In that case the claim of Gibbs was not for any physical labor but for services as superintendent and general manager. He did not even "pick up the samples of ore and assay them," as appellant's brief concedes that plaintiff did in this instance. He was not in any sense a "laborer," while here the

obtaining, sampling and assaying of ore were just as much part of the labor of carrying on mining operations   as the use of the pick and drill.   It is true, plaintiff's services were skilled labor, but it requires some skill even to use a drill efficiently.   All that can be said is that it required greater skill than that exercised by the workers in the tunnels.

We conclude that the plaintiff is entitled to a decree foreclosing his lien for the amount prayed for, less $43.50, and for the attorney's fee of $40 allowed him by the Circuit Court.

As to the liens of Pooler and Powers, we regret to say that there is no competent evidence that they have not been partially or wholly paid.   Those claimants held the liens from April to August, in which latter month they assigned them to plaintiff.   Plaintiff knows that nothing has been paid to himself, but he does not know and cannot prove what took place between Pooler and Powers and McCullough and Atkinson during the interim between April and August, and his testimony on that subject is conjecture and hearsay.   Pooler and Powers were in a position to know absolutely whether or not any payments had been made, but neither of them was put upon the stand, nor was their absence accounted for.

6. Contrary to the rule in other cases, the burden of proof of nonpayment is upon the person asserting the lien and this is particularly the case where the contract out of which the lien arose was made with someone not the owner of the property upon which it is sought to fasten the lien: *Lewis* v. *Beeman*, 46 Or. 311 (80 Pac. 417).   The situation in that case was similar to that in the case at bar.   The court, speaking through Mr. Justice MOORE, said:

"The plaintiffs M. L. Hall, Frank Cardwell, and John F. Troy, did not appear as witnesses at the trial; the testimony showing that neither of them was then in Jackson County. The plaintiff Alfred Lewis, who was foreman of the mines, testified in their behalf as to the correctness of the liens filed by each, in respect to the several sums due; but he did not say, and probably could not testify, that no payments had been made to them, or either of them, by Flanders or Beers, after the liens were filed. As the lessors' property is to be subjected in this suit to the payment of debts contracted by the lessees, the burden was imposed on the lien claimants of showing that no payments had been made on account of their liens since they were filed; and, not having done so, the claims of Hall, Cardwell and Troy must be disallowed."

7. It is suggested that because the original notices of lien were admitted in evidence without objection, the recitals in these constitute some affirmative testimony that no payments had been made beyond those therein admitted. The notices were properly admitted for the purpose of showing the regularity of the liens and the amounts claimed by the lienors; that is to say, they were competent to prove that at the date when they were filed the lienors had filed claims of lien regular in form and substance for amounts which they asserted to be due them. Beyond this, the notices had no evidentiary value whatever. In this view of the case we are compelled to disallow the claims of Pooler and Powers.

The decree of the Circuit Court will be so modified as to reduce the amount of plaintiff's recovery on his own lien to $362.20, which sum he shall recover together with $40 attorney's fee and his costs in the Circuit Court, including his claim for filing and re-

cording the lien. The liens claimed by Pooler and Powers are disallowed and neither party will recover costs in this court.                    MODIFIED.