Argued at Pendleton October 30, 1934; affirmed March 12; rehearing denied April 16, 1935

## SPAETH *v.* BECKTELL ET AL.

(41 P. (2d) 1064)

*Leo J. Hanley,* of Portland (Glen McCarty and Cookingham & Hanley, all of Portland, on the brief), for appellant.

*Colon R. Eberhard,* of La Grande (Cochran & Eberhard, of La Grande, on the brief), for respondents.

BELT, J. This is a suit to enforce a mechanics' lien for materials furnished and labor performed in the construction, alteration, and repair of the La Grande hotel, at La Grande, Oregon. The defendants, W. C. Becktell and his wife Alice E. Becktell, the owners of the hotel property, made no appearance and are in default. The defendant, Spokane Savings and Loan Society, a corporation, is the owner and holder of a mortgage originally amounting to $140,000 covering the property upon which plaintiff asserts a lien. Such mortgage was duly recorded in Union county on May 20, 1927. Howard H. Hansen, supervisor of banking of the state of Washington, who is liquidating the Spokane Savings Bank, was substituted for the Spokane Savings and Loan Society.

The plaintiff, a contractor and plumber in the city of La Grande, alleges in his complaint that on or prior to the 18th day of May, 1927, he entered into a contract with the owners of the La Grande hotel whereby he agreed to and did furnish materials and perform labor in the construction, alteration, and repair of the hotel building as follows:

1 Ideal water tube boiler, S2906-7B
1 Dunham return trap, 9A
1 Dunham air eliminator and all pipe and fittings in connection therewith
1 No. 5 "Iron Fireman" automatic coal burner, Type K, Form U, Serial 1692
1 galvanized iron smokestack.

Plaintiff alleges that the above materials were furnished and the labor of installing them was performed between and including the 21st day of October, 1927,

and the 27th day of October, 1928, and that they are of the agreed value of $3,148.05. Plaintiff avers that no part of this amount has been paid except the sum of $750.

In the notice of lien, which by reference is made a part of the complaint, the plaintiff sets forth the following statement of his demand:

| | | |
|---|---:|---|
| To Property purchased and/or labor performed Oct. 21, 1927 | $1500.00 | (Iron Fireman). |
| Interest on same to Nov. 21, 1927 | 10.00 | |
| Property purchased and/or labor performed Nov. 21, 1927 | 11.12 | (Repair radiator) |
| | 1521.12 | |
| Less payment on Nov. 21, 1927 | 750.00 | |
| Balance due Nov. 21, 1927 | 771.12 | |
| Interest on same to Aug. 15, 1928 | 45.23 | |
| Property purchased and/or labor performed 12/28/27 | 7.50 | (Check valve in |
| Interest on same to Aug. 15, 1928 | .38 | barber shop) |
| Property purchased and/or labor performed 1/20/28 | 69.90 | |
| Interest on same to Aug. 15, 1928 | 3.63 | |
| Property purchased and/or labor performed 4/2/28 | 52.70 | (Lavatory in |
| Interest on same to Aug. 15, 1928 | 1.55 | beauty shop) |
| Property purchased and/or labor performed 4/30/28 | 861.50 | (Ideal water tube |
| Interest on same to Aug. 15, 1928 | 20.10 | boiler, return trap and eliminator) |
| Property purchased and/or labor performed 5/26/28 | 78.00 | (Steam return |
| Interest on same to Aug. 15, 1928 | 1.37 | trap) |
| Property purchased and/or labor performed 11/5/27 | 265.40 | (Concrete work in |
| Interest on same to Aug. 15, 1928 | 15.82 | widening street) |
| Total Due Aug. 15, 1928 | 2174.22 | |
| Property furnished and/or labor performed (transferred from hotel by direction of W. C. Bechtel) | 44.50 | (Repair to drinking fountain oc- |
| Oct. 27, 1928, Furnishing and installing galvanized iron smokestack | 81.25 | casioned by |
| Interest on last three items | 98.08 | celebration on opening night |
| Total Due | $2398.05 | of hotel.) |

It is observed that in the complaint proper only five items are listed whereas in the notice of lien there are ten. It is not possible from the general designation, "Property purchased and/or labor performed", as stated in the lien notice, to know the nature or character of the work performed or materials furnished as claimed under each item. For the purpose of clarity, we have set forth in parentheses opposite each item the kind of work or materials involved. The lien notice was filed and recorded on November 26, 1928.

The answer of the Spokane Savings and Loan Society to the complaint was in the nature of a general denial.

The trial court found in favor of the plaintiff and allowed all the items claimed, except the charge of interest and that pertaining to "widening of street" amounting to $265.40. Credit was allowed for a payment of $300 made after the filing of the lien notice. Hence a decree of foreclosure of the lien was entered to satisfy a judgment against the Becktells for $1,656.47, together with attorney fees in the sum of $250. The defendant state supervisor of banking appeals.

It will thus be seen that the contest is between the state supervisor of banking who relies on the mortgage lien and the plaintiff who is asserting a mechanics' lien.

██ The theory of the plaintiff is that the work was performed and the materials furnished under and pursuant to a "continuing" contract entered into with the owner of the hotel building in May, 1927. In other words, plaintiff asserts that all the items set forth in his notice of lien are parts of one continuous connected transaction: *Van Wart v. Rees,* 112 Me. 404 (92 Atl. 328); *Darlington Lumber Co. v. Smith Building Co.,* 134 Mo. App. 316 (114 S. W. 77); *Hot Springs Plumbing & Heating Co. v. Wallace,* 38 N. M. 3 (27 P. (2d)

984). If this be true, it is not necessary, as stated in 40 C. J. 200, "that all the work or materials should be ordered at one time, that the amount of work or quantity of materials should be determined at the time of the first order, or that the prices should then be agreed upon, or the time of payment fixed; * * *." The rule is thus stated in Phillips on Mechanics' Liens (3d Ed.), § 229:

"Where work, distinct in its nature, is performed at different times, the law supposes it to have been performed under distinct engagements, as where the work at one time is for building and at another time for repairing. So where two distinct contracts are in fact made, as for different parts of the work, the work done under each contract must be considered as entire of itself. But when work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract."

Were these items of work performed and the materials furnished a part of one entire account? If so, the claim of lien may be filed within the statutory period dating from the time the last item of work was performed or material furnished. In the instant case, the last item, dated October 27, 1928, was for furnishing and installing a galvanized iron smokestack.

■ It is the contention of the appellant that the work was performed and the material furnished pursuant to separate and distinct contracts, and that they cannot be tacked together in order to extend the time for filing of the lien: *Hobkirk v. Portland National Baseball*

*Club,* 44 Or..605 (76 P. 776); *Paine and Nixon Co. v. Dahlvick,* 136 Minn. 57 (161 N. W. 257); *Sonner v. Mollohan,* 112 Kans. 148 (210 P. 649). Hence the validity of the lien depends upon whether the smokestack was furnished and installed as a part of one entire account or whether it was done pursuant to a separate and independent contract.

What is the evidence relative to this issue of fact? The plaintiff was not successful in bidding for the plumbing and heating work under the general contract. It was then, as testified by the plaintiff, that Becktell, in the "latter part of February or some time in April, 1927", said to him: " 'Well, Fred, I wanted you to do this plumbing and heating contract, but', he says, 'the other fellows are so much low, that I can't afford to pay the difference; so', he says, 'I am just compelled to give it to them, but', he says, 'I am going to have you do all of the extra work that comes up, as the building is being constructed, to complete the building, and make *is* satisfactory in every way, shape and form. And of course with that extra work, that is not any particular item,—those things *that come up that is not in the plans and specifications,*—changes that come up on the *construction* of the building,—for the *maintenance* of the building,—*for the operation* of the building.' " [Italics ours.] There is much uncertainty about the time of the making of this alleged offer by Becktell, which offer the plaintiff says that he accepted and in accordance with which he proceeded to do the work and furnish the materials. In the complaint it was originally alleged that the contract was made "on or about the 21st of October, 1927"—being subsequent to the recording of the mortgage—but on trial an amendment by interlineation was permitted, changing the time to "on or about the 18th

of May, 1927'', which was before the mortgage was recorded. Mr. Becktell, in testifying about the alleged contract, said: ''I was very sorry that he (Spaeth) could not have met the Alaska Plumbing and Heating bid, and I says, 'The general contract does not include a stoker, and I have to buy a stoker, and I hope I will be able to give you that business' and I went on to assure Mr. Spaeth,—I says, 'I want to assure you, Mr. Spaeth, that anything in the future that I will need in the hotel there, I will be more than glad to have you supply, and I want to tell you now, regardless of your losing the contract, I want to offer you any additional work, that goes to complete the hotel as a building'. I did say that to him.'' It is noteworthy that the language of Becktell relative to the extra work is quite similar to that which he used concerning the plumbing work which was not awarded to the plaintiff. Spaeth says that Becktell told him: ''Well, you are going to do the plumbing and heating for me. I want a local man to do that work, and I have made up my mind you are going to do the work.'' Yet the contract for such work was awarded the Alaska Plumbing and Heating Company without protest from plaintiff.

Plaintiff asserts that the extra work under his contract included ''changes that come up in the construction of the building'' as well as necessary work and materials for the *maintenance and operation of the building*. The building was substantially completed in the latter part of November, 1927. The last item for work and materials was dated October 27, 1928, more than a year after completion of the building.

We are convinced that Becktell desired to favor the local contractors and builders when he could do so without substantial loss, but it is not believed that he

ever made any contract covering work and materials which might be needed after substantial completion of the building or those which might be required in the course of the operation and maintenance of the hotel. It is unreasonable to suppose that he would do so. It is far more probable that the various items of work and materials set forth in the notice of lien were the result of separate and distinct contracts. Witness the following portion of Becktell's testimony:

"Q. Mr. Becktell, at the time there you were talking with Mr. Spaeth that you would favor him, your intention then was to favor him by giving him orders for such matters as was left out of the general contract, wasn't it?

"A. It sure was, yes. That was my full intention; at any time the hotel needed any repair, or needed any new plumbing of any kind, I was more than glad to give it to Mr. Spaeth; that is true.

"Q. And if there was anything that the general contract was deficient in, when you was talking with him, it was your intention that he should have the orders for it, *it* it arose?

"A. That is very true. I said to Mr. Spaeth, 'Now we will need a stoker later on, and *as long as your bid is anywheres near right,* you shall have the job.'' (Italics ours.)

The situation differs from that in a case where a contract was made for extra work and materials to be furnished during the course of construction of a building.

Let us now consider briefly some of the items which plaintiff asserts were included in his contract alleged to have been made in May, 1927.

It seems that, on the opening night of the hotel, some of the citizens of La Grande proceeded to celebrate the occasion and, according to the testimony of the plain-

tiff, during the course of the evening a lavatory was broken and the drinking fountain kicked over. The charge of $44.50 was made by plaintiff for the necessary repairs. We inquire, was this repair job completed under the contract of May, 1927?

"Property purchased and/or labor performed Nov. 21, 1927, $11.12": It appears from the record that, after the hotel had opened for business, the plaintiff disconnected a radiator, took it to the basement, and covered some steam pipes. Certainly this was a simple repair job. Is it to be reasonably contended that such work was referable to the contract in question? The same may be said concerning an item dated December 28, 1927—a charge of $7.50 for work performed in installing a check valve in the hotel barber shop.

The item dated April 2, 1928, for $52.70 covered a charge for the lavatory installed in the hotel beauty shop approximately seven months after the building was completed and occupied.

The item dated November 5, 1928, for $269.40, set forth in the notice of lien but, for obvious reasons, not alleged in paragraph 6 of the complaint was a charge for doing concrete work in the widening of the street in front of the hotel. This work was not done by the plaintiff but was performed by the partnership of Spaeth & Hartenbower. True, the trial court disallowed this item, but its inclusion by the plaintiff under his alleged contract tends to discredit the remainder of his claim.

The final item dated October 27, 1928, from which date the time for filing the notice of lien must be computed, covered a charge of $81.25 for a galvanized iron smokestack furnished and installed more than a year after the hotel had opened. Mr. Becktell thus testified concerning the same: "Well, as I said a little bit ago

I had a tenant that was inclined to squawk about little things, and there was smoke coming in the windows, when the wind was from a certain direction, and then it would change in a few days, and then come back again, and it rode along for some months, and finally Mr. Clinger spoke to me about it one day, and said that change had to be done, and I says, 'All right, Joe, we will see that it is done, *and so right now I will authorize Mr. Spaeth to put it up there.*' Clinger said the chimney lacked about 20 feet of being high enough. "Q. Did *you agree on the price he was to charge?* A. It was impossible to arrive at a definite figure. To the best of my knowledge *I told Mr. Spaeth to put it up there and send me the bill,* and if it was too much I would probably shoot him, or something like that. In other words, Mr. Spaeth was inclined to be fair,—in other words, he didn't want to profiteer on the cost, and I was willing to take his word for that."

We are unable to conclude that the various items listed in the notice of lien were contemplated by the parties to be considered as a part of one entire continuous contract. It seems more reasonable to the writer that they were separate and independent contracts. If the doctrine for which the respondent contends may be applied to the facts in this case, it would, indeed, be hazardous to lend money, taking as security a building substantially completed. When would plaintiff's alleged contract be completed? Would it be in one year or ten years?

There is no real dispute between counsel as to the law. The case is to be determined on an issue of fact, and each of the numerous cases cited must be considered in the light of its own particular circumstances.

The decree is reversed and the suit to foreclose the mechanics' lien is dismissed. Neither party will recover costs or disbursements.

Rossman and Bailey, JJ., not sitting.

Campbell, C. J., did not participate in this decision.

---

BEAN, J. (dissenting). This is a suit to foreclose a mechanic's lien on the hotel property known as the La Grande hotel, brought by the plaintiff, as original contractor, against the original owners, W. C. Becktell and wife, who made the contract, and a mortgagee, whose mortgage was made and recorded after the commencement of the construction of the building. Defendants Becktell, the owners of the property, at the time they made the contract with plaintiff, and at the time the lien was filed, were personally served with summons and complaint, but defaulted. The original mortgagee answered by general denial. The circuit court rendered a decree in favor of the plaintiff in the sum of $1,656.47, with interest, expenses of recording lien, and attorney's fees. Defendant Howard H. Hansen, supervisor of banking of the state of Washington, substituted for the Spokane Savings and Loan Society, a corporation, appealed.

Appellant contends, in effect, that the evidence conclusively establishes the fact that there was no contract as pleaded in the complaint or testified to; that the evidence establishes the fact that the work and labor performed by plaintiff consisted of isolated, separate and distinct contracts and that these contracts can not be tacked together in order to enlarge the time for filing a lien; that the lien notice includes nonlienable items

and is void; that there never was a seven-day notice given.

The general description of articles in the lien notice, furnished and installed, is as follows:

1 Ideal water tube boiler, S2906-7B
1 Dunham return trap, 9A
1 Dunham air eliminator and all pipe and fittings in connection therewith.
1 No. 5 "Iron Fireman" automatic coal burner, Type K, Form U, Serial 1693.
1 galvanized iron smokestack.

The items in the lien notice allowed by the court, after deducting those disallowed, were listed as follows:

La Grande, Oregon, Nov. 26, 1928.

Mr. W. C. Bechtel,
   On account with Fred Spaeth.

| | |
|---|---:|
| To property purchased and/or labor performed Oct. 21, 1927 | $1500.00 |
| Property purchased and/or labor performed Nov. 21, 1927 | 11.12 |
| | 1511.12 |
| Less payment on Nov. 21, 1927 | 750.00 |
| Balance due Nov. 21, 1927 | 761.12 |
| Property purchased and/or labor performed 12-28-27 | 7.50 |
| Property purchased and/or labor performed 1-20-28 | 69.90 |
| Property purchased and/or labor performed 4-2-28 | 52.70 |
| Property purchased and/or labor performed 4-30-28 | 861.50 |
| Property purchased and/or labor performed 5-26-28 | 78.00 |
| Total due on Aug. 15, 1928 | 1830.72 |

| Property furnished and/or labor performed (transferred from hotel by direction of W. C. Bechtel) | 44.50 |
|---|---|
| Oct. 27, 1928, Furnishing and installing galvanized iron smokestack | 81.25 |
| | 1956.47 |
| Payments made since notice filed | 300.00 |
| Total due | $1656.47 |

The evidence showed there was a contract between Spaeth and Becktell to furnish all the extras and fulfill all the requirements that might develop during the construction of the building, necessary to make the building operate satisfactorily. Mr. Spaeth testified that Mr. Becktell said to him: " 'Well, you are going to do the plumbing and heating for me.' He says, 'I want a local man to do that work, and I have made up my mind you are going to do the work'." Spaeth testified that he accepted the offer and told Becktell he would gladly do the work according to their agreement or contract until the building was completed and satisfactory, at the prevailing prices at the time the work was done.

The plaintiff proved the furnishing of the materials and labor, the filing and recording of a mechanic's lien, a contract and specific listing by dates and amounts, the various items claimed, and the reasonable value or contract price of each, and, also, that the claim has not been paid except as to the amounts credited. Becktell admits the allegation in regard to notice, as alleged in the complaint. While the defendant and appellant criticises the wording of the notice, we think it was a substantial compliance with the statute and sufficient.

The appellant contends that the contract between Spaeth and Becktell for furnishing materials and performing labor in May, 1927, did not contain all of the specifications as to what work would be required, and that it is not sufficient. The contract, in substance, was that Spaeth should do all the work necessary to the full completion of the building after the other contract, which did not involve all of the work, was completed.

The item "Property purchased and/or labor performed, 11-5-27, $265.40", which referred to some work done on the parking, or connecting the building with the street, was held by the circuit court to be nonlienable and was deducted from the amount of the claim of lien; also the interest on all the items was deducted. In view of the fact that plaintiff has not appealed, this item needs no further consideration. It is separate and distinct from the other items and easily segregated therefrom. No lumping charge was contained in the lien.

The work was all done and the materials were furnished under an entire continuing contract or understanding, although at different times. Therefore, a lien claimed or statement filed within the statutory period after the last item was done or furnished, is sufficient as to all the items. The same rule is applicable where all of the items furnished are parts of one continuous or connected transaction or continuous running account. In order that the requisite continuity may exist, it is not necessary that all the work or material should be ordered at one time, or that the amount of work or quantity of material should be determined at the time of the first order or that the price should be then agreed upon or that the time of payment fixed. It is sufficient if the last item of labor or material is furnished in pur-

suance of the mere general arrangement to furnish labor or materials for a particular building or employment, or an agreement or understanding that further labor or material will be required and furnished: 40 C. J. 198, § 236; *Bernard v. Hassan,* 60 Or. 62, 64 (118 P. 201).

At the time that Mr. Becktell made the contract with Spaeth for doing the work, he did not know just what he would do as to all of the work. It is not necessary that the contract under which materials are furnished and labor performed should be of such a nature that the parties could have it enforced by specific performance or that either party would be required to answer in damages for the failure to comply with the contract. Where the parties have performed the contract, it becomes an executed contract and not an executory one, and the lack of mutuality is removed: 13 C. J. 334, § 181; *Mid-Co Supply Co. v. Central Torpedo Co.,* 127 Okla. 273 (260 P. 753); *Joplin Sash & Door Co. v. Oklahoma Presbyterian College,* 36 Okla. 547 (129 P. 40, 43 L. R. A. (N. S.) 158); *Hot Springs Plumbing & Heating Co. v. Wallace,* 38 N. M. 3 (27 P. (2d) 984, 988); 1 Williston on Contracts, pp. 81 and 82, § 49, note 54.

Although the building was nearly completed and a portion of the heating and plumbing done at the time of his contract, yet Spaeth was an original contractor within the meaning of section 51-101, Oregon Code 1930: *Stark-Davis v. Lansdon,* 125 Or. 89 (265 P. 792); *Shea v. Graves,* 142 Or. 503 (19 P. (2d) 406). The fact that the building was occupied during the time a portion of the work was performed does not change the matter.

Spaeth testified that Becktell had planned for a beauty parlor, but did not know just exactly where; that he could place the beauty parlor where he thought best

during the completion of the building; that the beauty parlor lavatory was discussed, but not the particular place; that at the time the verbal contract was made at the beginning, there was also discussed the second boiler and a stoker for the second boiler; that there was no stoker specified in the general contract for the heating and plumbing, which was awarded to the Alaska Plumbing & Heating Company, and that they agreed upon an Iron Fireman automatic coal burner, and the price was fixed at $1,500. It appears that afterwards, in order for Mr. Spaeth to obtain this Iron Fireman, an order was taken from Mr. Becktell for the same. This is termed by appellant as a new contract. It did not detract in the least from the original arrangement, but was simply as a basis for ordering the fireman from the seller to Spaeth. Mr. Becktell testified that he said to Spaeth:

"I want to assure you, Mr. Spaeth, that anything in the future that I will need in the hotel there, I will be more than glad to have you supply, and I want to tell you now, regardless of your losing the contract, I want to offer you any additional work, that goes to complete the hotel as a building."

Becktell was asked whether he entered into such a contract, specifying each article, and he testified "that is all correct with the exception of the dates" about which he was not certain.

In *De Young v. Crooks,* 124 Or. 19 (263 P. 918), the court said:

"Plaintiffs claim $329.34 for extra labor and materials; we are of the opinion that this sum should be reduced to $311.01. The defendants contend that the plaintiffs cannot recover this sum due to the condition of the pleadings. The complaint alleges that the compensation to be paid by the defendants for the extra

items was agreed upon. An itemized statement of the extra items is set forth in the complaint with the actual charges made therefor. The testimony does not show that before the items were installed the plaintiffs and defendants met and agreed upon the amount. Upon the other hand, the testimony indicates that the defendants signified the extra items they desired, and requested the plaintiffs to supply the necessary labor and materials. The specifications which became a part of the contract contemplated that the defendants might desire some extra items.   *   *   *   The plaintiffs charged the defendants actual cost, plus fifteen per cent for supervision. Defendants contend that where an express contract is alleged a party cannot recover upon an implied one;   *   *   *"

As the written contract in that case recognized the fact that some minor changes might be desired, and therefore bound the contractor to make these changes on the requisition of the owner, it was held that the extra items desired were agreed upon, and the parties agreed that the defendants should pay for the actual cost, that the contract made provision for a percentage, and that the pleadings were sufficient to warrant a recovery under the proof.

The instant case is not one where trifling items of material and labor were furnished after the contract was actually completed. The last item of October 27, 1928, for furnishing and installing galvanized iron smokestack, $81.25, was as much a part of the construction of the building as the foundation itself. True, Becktell may not have known that he would be compelled to extend the smokestack, but, if he did, he had contracted with Spaeth to do the work.

Appellant claims that in order for the doctrine of continued contract or running account to be applied, labor or materials must be furnished pursuant to a

single contract, agreement or understanding, or must relate to one continuous job, such as the construction of a building. Taking this statement, we think the testimony plainly shows that the materials were furnished and labor performed pursuant to an agreement and understanding and relates to one continuous job, namely, that of the completion of the construction of the building by completing the heating and plumbing.

Again, appellant refers to the case of *Harrisburg Lumber Co. v. Washburn*, 29 Or. 150, 165 (44 P. 390), as pertaining to the nonlienable items, a case where the materials furnished were found to be 1,260 feet of lumber to be used in a sidewalk, the price of the lumber being given as $9.50 per thousand, and, the quantity and value being apparent from the notice, it did not depend upon oral evidence. The notice did not contain a lumping charge; hence the items of lumber furnished, to be used in building a sidewalk, did not invalidate the lien.

So here, the notice of lien contains a separate item for work in connection with the sidewalk or parking and is not connected in any way with the other items and is easily segregated. There was no lumping charge contained in the notice of lien in the present case, and this item did not invalidate the lien. The same may be said in regard to items charged for interest. The rule is well established in *Johnson v. Alm*, 121 Or. 285 (254 P. 803), that where a claim included both lienable and nonlienable items and where they are joined together in a lumping charge, without any segregation, the whole lien becomes void.

A lien is not defeated by the inclusion in the lien claim, or statement of charges, of items which are not lienable, such as materials which are used in building

or improvement where the inclusion of such charge is due to inadvertence or honest mistake, without fraudulent intent, and the items for which claimant is entitled to a lien can be segregated from those which are properly included. In such case the illegal charges will be eliminated and the lien will be enforced as to the proper and lienable charges: *Allen v. Elwert,* 29 Or. 428 (44 P. 823); *Title Guaranty Co. v. Wrenn,* 35 Or. 62 (56 P. 271, 76 Am. St. Rep. 454); *West Side Lbr. & S. Co. v. Herald,* 64 Or. 210 (129 P. 1006, Ann. Cas. 1914D, 876); *Northwest Lbr. & Fuel Co. v. Plantz,* 126 Or. 69, 73 (227 P. 1116, 268 P. 763).

As bearing on the case, see, also, *Eastern & Western Lbr. Co. v. Williams,* 129 Or. 1 (276 P. 257); *Bartels v. McCullough,* 102 Or. 66 (210 P. 733).

The plaintiff acted in good faith in filing his lien, and there is no fraud in connection with the item disallowed by the trial court.

The decree of the circuit court should be affirmed.