Argued March 1, affirmed June 4, 1976

J. W. COPELAND YARDS, *Appellant,*
*v.*
PHILLIPS et al, *Respondents.*
(Case No. CC-74-127)

WASHINGTON CAPTIAL CORPORATION,
*Respondent,*
*v.*
PHILLIPS et al, *Respondents,*
J.W. COPELAND YARDS, *Appellant.*
(Case No. CC-74-296)

550 P2d 438

*Jerry K. McCallister,* Astoria, argued the cause for appellant. On the briefs were Jeanyse R. Snow, and Macdonald, Dean, McCallister & Snow, Astoria.

*D. Richard Fischer,* Astoria, argued the cause for respondent First Federal Savings & Loan Association of Clatsop County. With him on the brief were Robert C. Anderson, and Anderson, Fulton, Lavis & Van Thiel, Astoria.

HOLMAN, J.

## HOLMAN, J.

This is a suit by J. W. Copeland Yards to foreclose a mechanic's lien for materials furnished in the construction of a condominium. The suit's protagonists are Copeland on one side and First Federal Savings and Loan Association of Clatsop County and the Washington Capital Corporation on the other, both of which advanced extensive sums of money for construction, which sums were secured by mortgages upon the condominium. A separate suit was begun by Washington Capital to foreclose its mortgage, in which Copeland was a defendant, and the two cases were combined for trial and appeal. Upon trial Copeland's lien was held to be invalid, although Copeland was given a personal judgment against the Phillipses, who were the owners of the condominium. Copeland appeals from the ruling that the lien is invalid.

The proof shows that the Phillipses were building contractors who, in addition to building the condominium upon their own property, were also engaged in many building contracts for others. The majority of the materials for all their jobs was purchased from Copeland and the charges therefor were carried by Copeland in one unsegregated account. However, it is possible to tell from Copeland's delivery tickets to which of the Phillipses' construction jobs the materials were delivered. All payments to Copeland on the account were made by the Phillipses rather than by any lending institution which might have been financing any of the construction jobs. By agreement with the Phillipses, the payments upon the account, when made, were credited upon the oldest unpaid purchases of materials without regard to the Phillipses' source of the funds, of which source Copeland was not apprised.

The balance owing upon the Phillipses' account with Copeland was $28,626.86, the amount for which the lien was filed. The entire amount is itemized in the lien as representing materials. However, an inspection of the Phillipses' account as kept by Copeland demon-

strates that of the $28,626.86, $1,842.23 is shown on the account as representing interest charged, which interest is not lienable. In addition, by applying the payments in the manner in which Copeland says it was obligated to apply them by its agreement with the Phillipses, it is shown that the Phillipses' account, according to Copeland's records, was paid through April 25, 1973. From that date to September 20, 1973, the date of the last purchase prior to the filing of the lien, the Phillipses' purchases, according to Copeland's records, were divided almost equally between those for the condominium and those for other construction projects.

From these records it is apparent that application of the Phillipses' payments was misrepresented in Copeland's lien. Approximately one-half of the materials for which the lien was filed had been paid for. Copeland's credit manager testified that under his supervision, the Phillipses' account was reconstructed from its records, the payments being applied in accordance with Copeland's agreement with the Phillipses, and it showed that all unpaid items on the account were used in the condominium because all other construction projects of the Phillipses were concluded prior to the unpaid purchases which were the subject of the lien. Copeland's records demonstrate in an obvious and patent manner that this is untrue.

The law applicable to such a situation is stated to be as follows in *Brown v. Farrell; Farrell v. Brown,* 258 Or 348, 354-55, 483 P2d 453 (1971):

"* * * There are many Oregon cases which say that where the lien is negligently or fraudulently overstated it will be invalidated in its entirety. We have no quarrel with the statement that where fraud is involved, equity should not lend its powers to the foreclosure of the lien. However, we do not believe that negligence alone ought to defeat a lien in all circumstances. We think the rule was properly stated by Mr. Justice McBride in *Bartels v. McCullough,* 102 Or 66, 201 P 733 (1921):

" 'In *Mason v. Germaine, supra,* [1 Mont. 263] the

[ 196 ]

court discussing this subject under a similar statute remarked:

" ' "The fact that the complaint and notice of lien claimed as due plaintiffs a larger amount than that found by the court, will not destroy their lien for the amount actually due, unless there be a fraudulent intent in filing the same, which must be proved and will not be presumed."

" 'This statement appears to us to be fair and equitable, and we adopt it, with the reservation, however, that there may be cases where the negligence in preparing the notice is so gross and palpable or has so misled the defendant as itself to raise a presumption of intentional fraud, or has occasioned such action by a defendant in the premises as to preclude the plaintiff from any right to relief in equity. * * *' * * *.' "

While in neither *Brown* nor *Bartels* did the court find a situation which it believed to be presumptively fraudulent, here the negligence, if such it was, in preparation of the lien was so gross and palpable as to raise a presumption of intentional fraud, and equity will not lend its powers to the foreclosure of the lien.

In view of our disposition, it is unnecessary for us to consider the many other questions raised on appeal.

The decree of the trial court is affirmed.