Argued and submitted April 1; reargued May 13, 1998, reversed and remanded in part; otherwise affirmed February 24, 1999

Andy STRICKER, P. E.,
dba Stricker Engineering,
*Respondent,*

*and*

Richard GITSCHLAG, P. E.,
dba Rhema Engineering,
*Plaintiff,*

*v.*

H. H. TAYLOR
and C. A. Taylor,
*Appellants.*

(95-3142; CA A97531)

975 P2d 930

James N. Westwood argued the cause for appellants. With him on the briefs was Miller, Nash, Wiener, Hager & Carlsen, LLP.

Ralph M. Yenne argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, Deits, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendants appeal a judgment entered against them in an action for lien foreclosure, ORS 87.060, and breach of contract. We reverse and remand for entry of a modified judgment.

Defendants own property in Lincoln County on which they planned to construct a multistory hotel. In the fall of 1994, defendant H. H. Taylor (Taylor) met with plaintiff Andy Stricker, P. E.,[1] a licensed civil and structural engineer, to discuss hiring plaintiff to prepare designs for the project and to advise Taylor on how to build the project. Taylor told plaintiff that he thought the building could be constructed with a wood frame for approximately $900,000. On October 27, 1994, plaintiff sent a proposal to Taylor, which provided, in part:

> "The billing rate for this project is $65 per hour for design review and structural design. Substantial changes to the design may be cause for an increased design fee. In this event, additional charges will be presented to you prior to proceeding with any changes.
>
> **"TOTAL PRICE (not to exceed) = $7200**
>
> "* * * Prior to proceeding with this project, I will require a $1000 retainer."

(Boldface in original.) The next day, Taylor faxed a letter to plaintiff seeking further details on what areas were covered by plaintiff's proposal. On October 29, 1994, plaintiff responded to Taylor's letter and advised him that he would provide work on "[s]ite utilities" and "[l]andscaping and parking areas" "as needed as an extra item. Cost will be up to $500 depending on what is required by" the appropriate agencies. Plaintiff also stated that any additional reports required by Lincoln County or by the state would be subject to additional fees. Defendants paid plaintiff a retainer in January 1995, and plaintiff began work on the project. On January 30, 1995, plaintiff advised Taylor that, contrary to Taylor's expectations, the building would cost not $900,000, but between

---

[1] The claims of plaintiff Richard Gitschlag, P. E., dba Rhema Engineering, are not involved in this appeal.

$1,200,000 and $1,350,000. Plaintiff also advised Taylor that, to comply with applicable building codes, the building would have to be built with a steel framework.

Taylor was unhappy with plaintiff's conclusions and told plaintiff that he wanted a wood building designed to reduce construction costs as much as possible. By early April 1995, plaintiff completed the designs for a steel frame hotel. Plaintiff offered an alternative design idea to Taylor that called for reducing the hotel by one story and modifying its design so that it could be built out of wood and that the costs would be reduced. Taylor did not communicate with plaintiff for several weeks and, at the end of April 1995, told plaintiff that he was not going to pay him for the work he had done because he was disappointed that the designs did not fit the target price. On April 26, 1995, plaintiff resigned. On May 8, 1995, plaintiff sent a letter to Taylor attaching his final invoice:

> "Attached you will find my final invoice, plus the previously unpaid invoice, for the subject project. The new invoice contains only the hours worked in April and brings the total amount under the not to exceed price that I quoted you for the full set of plans including the site drainage plan and design ($7200 + $500)."

Taylor refused to pay the outstanding balance. Plaintiff served a Notice of Right to Lien on Taylor and, on June 16, 1995, filed a lien against defendants' property. The face of the lien stated a total due of $9,035, with a credit of $3,510 for sums already paid, leaving a balance due of $5,525. Attached to the lien were invoices totaling $7,540.

A month later, plaintiff filed his complaint, alleging three claims: breach of contract, *quantum meruit*, and lien foreclosure. Defendants answered, denying the allegations in the complaint and asserting counterclaims for professional negligence and breach of contract. At trial, plaintiff testified that he prepared a summary of all of the hours he worked and that his lawyer prepared the lien of $9,035 based on that summary. The breach of contract action also was based on that amount. After a bench trial, the trial court found in favor of plaintiff on the breach of contract and lien foreclosure claims. The judgment awarded plaintiff a net amount of

$5,525 on the breach of contract claim, with interest from April 26, 1995, and granted the lien foreclosure in the amount of $5,525, along with attorney fees on the lien claim.

On appeal, defendants make two assignments of error. First, they assign error to the granting of the lien fore-closure. They argue that, because the lien was intentionally overstated, the trial court should have granted their motion to dismiss that claim. Secondly, defendants assign error to the trial court's award of $9,035 on the breach of contract claim. Defendants assert that, at most, the trial court should have awarded $7,200, the not-to-exceed contract price. Plain-tiff argues that the lien foreclosure award was proper because the amount was not overstated and that, even if it was overstated, the error was not fraudulent or so grossly negligent as to invalidate the lien. Similarly, on the breach of contract claim, plaintiff argues that evidence supports the trial court's judgment that plaintiff was owed $9,035 under the contract.

■ We review lien foreclosure judgments *de novo*. *A-C Construction, Inc. v. Bakke Corp.*, 153 Or App 41, 45, 956 P2d 219, *rev den* 327 Or 553 (1998). After carefully reviewing the record, we agree with defendants that the lien amount of $9,035 was overstated. The terms of plaintiff's contract for engineering services were defined and clarified in the corre-spondence between plaintiff and Taylor from October 27 to October 29, 1994. The terms of the contract included a "not to exceed" price of $7,200, with the understanding that if designs for "site utilities" and "landscaping and parking areas" were needed, up to an additional $500 would be added to the contract price. The contract also provided that "addi-tional charges would be presented to [defendants] prior to proceeding with any changes." We find no evidence that there was a change to that contract term, that plaintiff "presented" any "additional charges" to defendants before incurring them, or that defendants agreed to any additional fees, including the fees for site utilities and landscaping and park-ing areas. Moreover, plaintiff's letter of May 8, 1995, acknowledges that plaintiff's total bill for his work on the pro-ject did not exceed the contract price. Accordingly, defen-dants are not liable for any amount beyond the stated con-tract price of $7,200.

Defendants assert that, because the lien was over-stated, the lien must fail in its entirety. Defendants argue that plaintiff's negligence in filing the overstated lien was sufficiently extreme to require invalidation because plaintiff never communicated to defendants that he claimed $9,035 before the lien was filed. Although we agree with defendants' factual assertions, we do not agree with defendants' legal conclusion that plaintiff's overstatement of the lien amount requires us to invalidate the lien altogether.

■      As a general rule, the overstatement of a lien will not destroy the lien entirely unless there is a showing of fraud or gross and palpable negligence sufficient to raise a presumption of fraud. In *Brown v. Farrell; Farrell v. Brown*, 258 Or 348, 483 P2d 453 (1971), for example, the plaintiff subcontractor filed a lien against the defendant owners for materials, profit, and labor. The plaintiff claimed labor charges for the full contract price, but, in fact, the plaintiff left the job early and earned only about half of that amount. *Id.* at 353-54. The court observed that "[i]t is clear that he had no right to a lien for work he had not performed, and, therefore, he should not have filed the lien as he did." *Id.* at 354. The court disallowed all of the labor charges claimed under the lien because the labor charges for which work was performed were "lumped with" the charges for which no work was performed. *Id.* The court also disallowed the profit charges because it was not clear whether the profit was based on the materials or labor, or both. *Id.* at 355. Nonetheless, the court allowed the lien for materials to stand, finding that the actions of the plaintiff were not so "grossly and palpably negligent as to raise a presumption of fraud." *Id.* Moreover, the court observed that the plaintiff's overstatement could not have been misleading as to the materials because they were "itemized in the lien, and [the defendants] could ascertain that they were actually furnished to the job." *Id.*

Similarly, in *Bartels v. McCullough*, 102 Or 66, 201 P 733 (1921), the Supreme Court upheld an overstated lien in which the plaintiff calculated his labor cost at a higher rate than agreed to by the defendant. The court held that a mistake in an item of a claim does not necessarily render the entire claim void when it is evident that no fraud is intended

and where it has not misled the defendant owner to his prejudice in making his defense. *Id.* at 70. The court noted that the defendant was not misled by the overstatement because the defendant, by his general denial, had

> "put in issue the fact that [the] plaintiff did any work at any wage, that he had any lien, or that any amount was due him. These issues would have been tried in any event. There was no controversy as to particular items or as to particular payments. And it is more fair to presume a not unnatural mistake than to assume that [the] plaintiff had a fraudulent intent in the notice."

*Id.* at 71-72.

In contrast, the court disallowed an overstated materials lien in *J. W. Copeland Yards v. Phillips*, 275 Or 193, 550 P2d 438 (1976). In that case, the plaintiff furnished materials for several of the defendants' projects. All of the materials sold were carried in one unsegregated account, but the delivery tickets revealed which materials applied to specific jobs. By agreement, all payments made to the plaintiff were credited to the oldest unpaid purchases without regard to the source of funds or building site. *Id.* at 195. The lien amount on a single condominium project included an interest charge that was not lienable and included charges equaling about half of the lien amount for other projects. *Id.* at 196. The court noted that the plaintiff's credit manager testified that all of the charges were attributable to the condominium project, but that such testimony was in direct conflict with the plaintiff's own records. *Id.* The court held that the negligence, "if such it was," in preparing the lien was so gross and palpable as to raise a presumption of intentional fraud. *Id.* at 197.

In this case, we do not find the negligence in overstating the lien to be so gross as to invalidate the entire lien. Although it is difficult to ascertain the source of the amount claimed in the lien, defendants knew they had a contract price of $7,200, that demand had been made for the full contract price, and that they had paid only $3,510. As in *Brown*, the overstatement of the lien did not invalidate what was discernable by the defendant, if the nonlienable portion was not procured by gross negligence. In this case, plaintiff testified

that, notwithstanding the contract price of $7,200, he had dedicated more hours to the project than anticipated and that he could not present additional charges to defendants for approval because they would not return his calls. Although we disagree that the $7,200 contract price can be modified for those reasons, we do not find that plaintiff's conduct rises to a level of negligence so culpable that he should be denied payment on the work contracted for and that he performed. Moreover, as in *Bartels*, defendants were not materially prejudiced by the overstatement. *See also A-C Construction*, 153 Or App at 49-50 (in the absence of fraud or culpable negligence, when the owner can separate lienable charges from nonlienable charges, the owner has suffered no prejudice; the lien will stand with deductions of the nonlienable charges). Defendants' answer and counterclaims disputing that any amount was owed and seeking damages would not have changed.

Our analysis of the parties' contract applies equally to defendants' second assignment of error relating to the trial court's award of $9,035 on the contract claim. Our review is limited to whether there is any evidence to support the judgment. *Snyder v. Schram*, 282 Or 273, 276, 577 P2d 935 (1978); *Becerril v. Hakanson*, 97 Or App 583, 585 n 1, 776 P2d 1306 (1989). As we held above, the contract between the parties stated a not-to-exceed price of $7,200, with an agreement that plaintiff would present defendants with additional charges before incurring them. There is no evidence that plaintiff ever presented the charges to defendants or of any modification of the contract to account for the additional contract damages. Accordingly, defendants are required to pay only the contract price to which they agreed, $7,200.

Reversed and remanded for entry of judgment in favor of plaintiff Andy Stricker, P. E., allowing foreclosure of the lien in the amount of $7,200, less the $3,510 already paid, and awarding $3,690 on the breach of contract claim; otherwise affirmed.